UNITED STATES of America, Plaintiff,

v.

Robert Austin WARNER, Defendant.

No. G76–122 C.A.

United States District Court,
W. D. Michigan, S. D.

June 5, 1978.

J. Terrance Dillon, Asst. U. S. Atty., Grand Rapids, Mich., for plaintiff.

Harry Lieffers, Jr., Grand Rapids, Mich., for defendant.

## OPINION

FOX, Chief Judge.

This case presents the novel question of whether or not the United States is barred by the Michigan "No Fault" automobile insurance act from bringing an action for damages to a Government-owned motor vehicle caused by the negligence of the defendant, driver of a Michigan-registered motor vehicle. That single question, however, disguises a more complex consideration of the relationship between state and federal law.

The parties stipulate to the following facts: Defendant is a resident of Michigan and, on or about June 11, 1975, negligently drove his car across the center line of a highway and struck a car in the opposing lane of traffic, proximately causing $1,569.21 worth of damage. The automobile struck by defendant was owned by the plaintiff United States and was being operated by its agent and employee with the knowledge, consent, and for the benefit of the United States in a proper and lawful manner. The instant case is confined solely to an action for the damages to the government-owned auto caused by defendant's negligence. Upon these stipulated facts the Government moves for summary judgment, upon the issue of law that its recovery is not barred by the Michigan "no fault" act.

Defendant claims that the act provides him with immunity from the present suit. M.C.L.A. § 500.3101 *et seq.*; M.S.A. § 24.-13101 *et seq.* The act requires that all automobiles registered in Michigan (and all

non-registered automobiles operated in Michigan in excess of thirty days per year) have no fault insurance coverage in effect. The section of the act under which defendant claims immunity reads as follows:

(1) A person remains subject to tort liability for noneconomic loss caused by his ownership, maintenance or use of a motor vehicle only if ·the injured person has suffered death, serious impairment of body function or permanent serious disfigurement.

(2) Notwithstanding any other provision of law, *tort liability* arising *from the ownership, maintenance or use within this state of a motor vehicle with respect to which the security required by subsections (3) and (4) of section 3101 was in effect is abolished* except as to:

(a) Intentionally caused harm to persons or property. Even though a person knows that harm to persons or property is substantially certain to be caused by his act or omission, he does. not cause or suffer such harm intentionally if he acts or refrains from acting for the purpose of averting injury to any person, including himself, or for the purpose of averting damage to tangible property.

(b) Damages for noneconomic loss as provided and limited in subsection (1).

(c) Damages for allowable expenses, work loss and survivor's loss as defined in sections 3107 and 3110 in excess of the daily, monthly and 3 year limitation contained in those sections. The party liable for damages is entitled to an exemption reducing his liability by the amount of taxes that would have been payable on account of income the injured person would have received if he had not been injured.

M.C.L.A. § 500.3135; M.S.A. § 24.13135 (emphasis added). If the Act is applicable, it would bar the instant action.

The initial question for the court, in matters of this kind, is whether the state rule of law or a federal rule of law should be applied. An examination of the relevant case authority leads me to the conclusion that this court is required to fashion the governing rule of law according to federal standards.

In *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), the Supreme Court held that the rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law. The Court relied in part upon the fact that "[t]he authority to issue the check had its origin in the Constitution and the statutes of the United States and was in no way dependent on the laws of Pennsylvania or of any other state." *Id.,* 318 U.S. at 366, 63 S.Ct. at 575.

Although *Clearfield Trust* applied these principles to a case involving the contractual relations of the Government, the principles have been held to be equally applicable where the relations affected are non-contractual or tortious in character. *United States v. Standard Oil Co.,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947). *Standard Oil* involved facts closely analogous to those present here. A truck owned by Standard Oil Co. struck and injured a soldier in the United States Army. The soldier settled his claim with Standard Oil and signed a release. The Government, however, then filed an action against Standard Oil to recover the money it had expended for the soldier's hospitalization and disability pay. The *Standard Oil* Court held that application of a federal rule of law was appropriate because of the uniquely federal relationship between the United States and its military personnel and because the matter affected the Government's purse as well. As to the latter consideration, the Court commented:

"Indeed, in this aspect the case is not greatly different from the *Clearfield* Case *or from one involving the Government's paramount power of control over its own property, both to prevent its unauthorized use or destruction and to secure indemnity for those injuries.*" *United ed States v. Standard Oil Co., supra,* 332 U.S. at 306, 67 S.Ct. at 1607 (emphasis added).

Nor is this an issue which is primarily one of state interest or exclusively for determination by state law within the spirit of *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As was said in *Standard Oil*:

". . . [T]he liability sought is not essential or even relevant to protection of the state's citizens against tortious harms . . . It is rather a liability the principal, if not the only, effect of which would be to make whole the federal treasury for financial losses sustained, flowing from the injuries inflicted . . . The question, therefore, is chiefly one of federal fiscal policy, not of special or peculiar concern to the states or their citizens. And because those matters ordinarily are appropriate for uniform national treatment rather than diversified local disposition, as well where Congress has not acted affirmatively as where it has, they are more fittingly determinable by independent federal judicial decision than by reference to varying state policies." *United States v. Standard Oil Co., supra,* 332 U.S. at 310–11, 67 S.Ct. at 1609.

Rights and responsibilities in the ownership of Government property are essentially of a federal character. U.S.Const. Art. 4, § 3 cl. 2. They vitally affect the interests, powers, and relations of the Federal government so as to require uniform national disposition rather than diversified state rulings. Cf. *Clearfield Trust Co. v. United States, supra,* 318 U.S. at 366–88, 63 S.Ct. 573.

In the absence of action by Congress, however, the courts have occasionally selected state law in their determination of the applicable federal rule. *Clearfield Trust Co. v. United States, supra,* 318 U.S. at 367, 63 S.Ct. 573. The present case does not recommend itself to such a result. To do so generally requires matters in which the application of the local law affords not only a convenient and fair mode of disposition, but is also inescapable or does not result in substantially diversified treatment where uniformity is appropriate, in view of the subject matter and the specific issues affecting the Government's interest. Application of the Michigan no fault law is not inescapable, as the issue here is not the fair and efficient recovery of accident damages by a Michigan motorist, but whether or not the Government may obtain recovery for damage to its property. Nor, as in *Standard Oil,* should the Government's right to be compensated for damages to its property, or the lack of such right, vary in accordance with the different rulings of the several states, simply because the government car is driven across state lines.

In addition to the Government's paramount power of control over its own property, the Government can also rely here upon 40 U.S.C. § 471, which authorizes the establishment of government motor pools, and 41 C.F.R. § 101–39.805 (1977), which authorizes the Government to seek recovery of its claim where there is any indication that a party other than the operator of the government vehicle is at fault in an accident involving a motor pool vehicle.

Permitting the instant action to be brought will not seriously interfere with the purposes for which the Michigan "no fault" act was enacted [1] nor will it burden the administration of the act. Because of the essentially federal interest in protecting Government property and because the federal Government's right to recover for damage to its property should not vary merely because of the situs of that property, I conclude that the state rule which would bar recovery here should not be adopted as the federal rule of law in this case. An appropriate federal rule of law would permit an action such as this. For these reasons, summary judgment being appropriate upon the stipulated facts and the record in this action, the motion of the Government for summary judgment will be granted.

---

1. The purposes for which the Michigan no fault act were enacted are discussed in *McKendrick v. Petrucci,* 71 Mich.App. 200, 247 N.W.2d 349 (1976), and *Shavers v. Attorney General,* 65 Mich.App. 355, 237 N.W.2d 325 (1975).