**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Rhonda S. FERGUSON,**
**Defendant-Appellant.**

**No. 82-1227.**

United States Court of Appeals,
Sixth Circuit.

Argued April 11, 1983.

Decided Feb. 7, 1984.

William V. Taylor (argued), Dickinson, Mourad, Brandt, Hanlon & Becker, Detroit, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Patricia Reeves, Lynn Richardson (argued), Asst. U.S. Attys., Detroit, Mich., for plaintiff-appellee.

Before LIVELY, Chief Judge, ENGEL, Circuit Judge and CELEBREZZE, Senior Circuit Judge.

ENGEL, Circuit Judge.

The single issue in this appeal is more easily stated than resolved: does Michigan's "No-Fault" Automobile Insurance Act, Mich.Comp.Laws Ann. §§ 500.3101–.3179 bar the United States from bringing a negligence action in federal court to recover damages to a government-owned motor vehicle caused by a collision in Michigan with a Michigan-registered motor vehicle?

On April 7, 1980, Rhonda Ferguson backed her 1977 Datsun into the southbound lane of a street in Detroit, Michigan and collided with a government vehicle. The parties have stipulated that Ms. Ferguson's negligence was the sole proximate cause of the damage to the government car and that repairs to the car cost $2,777.98.

Ms. Ferguson refused to pay for the repairs to the car, asserting that she is immunized from tort liability pursuant to the Michigan No-Fault Insurance Act.[1] The

---

1. Justice Williams, writing for the Michigan Supreme Court, described the objectives of the No-Fault Act as follows:

[The Act] was offered as an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system. The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses. The Legislature believed this goal could be most effectively achieved through a system of *compulsory* insurance, whereby every Michigan motorist would be required to purchase no-fault insurance or be unable

government commenced this action in the United States District Court for the Eastern District of Michigan and filed a motion for summary judgment, alleging that federal law, not the Michigan Act, applied to a claim for property damages made on behalf of the government. The district judge granted summary judgment in favor of the government, adopting the rationale of *United States v. Warner,* 461 F.Supp. 729 (W.D. Mich.1978). We affirm.

So far as we can ascertain, the facts here are indistinguishable from those before United States District Judge Noel P. Fox in *Warner.* Similar decisions were reached by the district judge here and by two other district judges in unreported decisions. *United States v. Habberfield,* Civ. No. 81–71332 (E.D.Mich. Sept. 22, 1981) (Churchill, J.), and *United States v. Monterosso,* Civ. No. 81–72242 (E.D.Mich. March 5, 1982) (Boyle, J.). Of the three Michigan federal judges whose opinions we cite, two are former circuit judges in the State of Michigan and the other, Judge Boyle, is presently a Justice of the Supreme Court of Michigan. While of course not dispositive of the legal issue here, this unanimity does at least provide a measure of assurance that the determination that federal interests predominate was made by judges sensitive to Michigan's interest in this area.

The United States asserts at the outset that Michigan's No-Fault Insurance Act by its own terms does not apply to the federal government. It notes that the Act provides that "[t]he owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits. . . ." Mich.Comp.Laws Ann. § 500.3101(1) (1983). The United States then correctly observes that federal governmental vehicles are not required to be registered in Michigan. Mich.Comp.Laws Ann. § 257.216(f) (Supp.1983). If the Michigan statute did expressly exclude federal governmental vehicles from its coverage, then

there would be little reason indeed to cloak any Michigan citizen or automobile registrant with immunity under the Act whether the question were conceived to be one of federal supremacy or of state law. However, in *Lee v. Detroit Automobile Inter-Insurance Exchange,* 412 Mich. 505, 315 N.W.2d 413 (1982), the Supreme Court of Michigan found that a United States postal worker was entitled to collect personal injury benefits from the insurer of his personal vehicle, even though he was injured while unloading a mail truck, a government vehicle which was not required to be registered in Michigan. The Court rejected a construction of the Act which would have made the no-fault benefit section of the Act (§ 500.3105) applicable only to accidents involving a motor vehicle required to be registered in the State. Given this expansive view of the Act's coverage, we assume, but without actually deciding, that Judge Fox was correct in *Warner* in holding that "[i]f the Act is applicable, it would bar the instant action." 461 F.Supp. at 730.

We further agree with Judge Fox that in resolving this issue we should be guided by the principles set forth in *Clearfield Trust Company v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943) and *United States v. Standard Oil Co.,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947). Curiously, both the United States and Ferguson claim support from *Standard Oil.* The United States points to the Court's holding that the issue of liability was governed by federal law, while Ferguson points to the Court's ultimate conclusion that the government could not recover in the absence of legislation by Congress creating a right of recovery. In our considered opinion, the United States has the better of the argument. We agree with Judge Fox's analysis in *Warner:*

> *Standard Oil* involved facts closely analogous to those present here. A truck owned by Standard Oil Co. struck and injured a soldier in the United States

to operate a motor vehicle legally in this state. Under this system, victims of motor vehicle accidents would receive insurance benefits for their injuries as a substitute for their common-law remedy in tort.

*Shavers v. Kelley,* 402 Mich. 554, 578–79, 267 N.W.2d 72, 77 (1978). Pursuant to this policy, the Act provided for a "partial abolition of tort remedies." *Id., see* Mich.Comp.Laws Ann. § 500–3135 (1983).

Army. The soldier settled his claim with Standard Oil and signed a release. The Government, however, then filed an action against Standard Oil to recover the money it had expended for the soldier's hospitalization and disability pay. The *Standard Oil* Court held that application of a federal rule of law was appropriate because of the uniquely federal relationship between the United States and its military personnel and because the matter affected the Government's purse as well. As to the latter consideration, the Court commented:

> "Indeed, in this aspect the case is not greatly different from the *Clearfield* Case *or from one involving the Government's paramount power of control over its own property, both to prevent its unauthorized use or destruction and to secure indemnity for those injuries.*" *United States v. Standard Oil Co., supra,* 332 U.S. at 306, 67 S.Ct. at 1607 (emphasis added).

Nor is this an issue which is primarily one of state interest or exclusively for determination by state law within the spirit of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As was said in *Standard Oil:*

> " ... [T]he liability sought is not essential or even relevant to protection of the state's citizens against tortious harms ... It is rather a liability the principal, if not the only, effect of which would be to make whole the federal treasury for financial losses sustained, flowing from the injuries inflicted ... The question, therefore, is chiefly one of federal fiscal policy, not of special or peculiar concern to the states or their citizens. And because those matters ordinarily are appropriate for uniform national treatment rather than diversified local disposition, as well where Congress has not acted affirmatively as where it has, they are more fittingly determinable by independent federal judicial decision than by reference to varying state policies." *United States v. Standard Oil Co., su-*

*pra,* 332 U.S. at 310–11, 67 S.Ct. at 1609.

Rights and responsibilities in the ownership of Government property are essentially of a federal character. U.S. Const. Art. 4, § 3 cl. 2. They vitally affect the interests, powers, and relations of the Federal government so as to require uniform national disposition rather than diversified state rulings. Cf. *Clearfield Trust Co. v. United States, supra,* 318 U.S. at 366–68, 63 S.Ct. 573 [at 574–75]. In the absence of action by Congress, however, the courts have occasionally selected state law in their determination of the applicable federal rule. *Clearfield Trust Co. v. United States, supra,* 318 U.S. at 367, 63 S.Ct. 573 [at 575]. The present case does not recommend itself to such a result. To do so generally requires matters in which the application of the local law affords not only a convenient and fair mode of disposition, but is also inescapable or does not result in substantially diversified treatment where uniformity is appropriate, in view of the subject matter and the specific issues affecting the Government's interest. Application of the Michigan no fault law is not inescapable, as the issue here is not the fair and efficient recovery of accident damages by a Michigan motorist, but whether or not the Government may obtain recovery for damage to its property. Nor, as in *Standard Oil,* should the Government's right to be compensated for damages to its property, or the lack of such right, vary in accordance with the different rulings of the several states, simply because the government car is driven across state lines.

In addition to the Government's paramount power of control over its own property, the Government can also rely here upon 40 U.S.C. § 471, which authorizes the establishment of government motor pools, and 41 C.F.R. § 101–39.805 (1977), which authorizes the Government to seek recovery of its claim where there is any indication that a party other than the operator of the government vehicle is

at fault in an accident involving a motor pool vehicle.

461 F.Supp. at 730–31. We have only two further observations to add to Judge Fox's analysis.

First, our decision does not purport to establish a new and independent federal common law of the road insofar as the determination of negligence itself is involved. The parties have stipulated that the accident was due solely to the negligence of Ferguson. Certainly we would have to think long and hard before we endeavored to establish for drivers of federal vehicles an entirely different law of the road than that which is required of drivers generally in Michigan. Such a result could only produce chaos and would disturb the long-settled notion that drivers of vehicles of the several states are responsible for obeying the statutory and common law of the road of the state in which they are traveling. The question instead is one of exemption from liability on the part of certain drivers in Michigan for the consequences of their negligent acts. As the Supreme Court of Michigan has made clear in *Citizens Insurance Co. of America v. Tuttle,* 411 Mich. 536, 309 N.W.2d 174 (1981), "the nofault act was not intended to work a comprehensive abolition of all tort liability incident to a motor vehicle accident." 411 Mich. at 544, 309 N.W.2d at 177.

Second, we are not faced with the problems that might have been present had Michigan abolished its law of negligence in the operation of motor vehicles. It is clear from the Michigan Supreme Court's interpretation of the No-Fault Act that Michigan has not altered its notions of what is and is not negligence under its motor vehicle law. Furthermore, many types of liability yet remain which call for daily interpretation and development of these rules. The most important, of course, is tort liability for serious personal injuries arising from the operation of motor vehicles.[2]

Our attention, therefore, turns to the application of the principles set forth primarily in *Standard Oil* to the consequences of Michigan's no-fault law as applied to a suit by the United States for damages caused to its property by the negligence of a driver in Michigan.

We do not question the right of the State of Michigan to enact no-fault legislation generally. Plainly such legislation furthers a number of public policies, not the least of which is that of reducing the cost and delay accompanying much automobile injury litigation. At the same time *Standard Oil* seems to be directly applicable here in its reference to the continuing interest of the United States in exercising its "paramount power of control over its own property, both to prevent its unauthorized use or de-

2. The exceptions to the abolition of tort liability arising from motor vehicle accidents are set forth in Mich.Comp.Laws Ann. § 500.3135(1), (2) (1983):

(1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

(2) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101(3) and (4) was in effect is abolished except as to:

(a) Intentionally caused harm to persons or property. Even though a person knows that harm to persons or property is substantially certain to be caused by his or her act or omission, the person does not cause or suffer such harm intentionally if he or she acts or

refrains from acting for the purpose of averting injury to any person, including himself or herself, or for the purpose of averting damage to tangible property.

(b) Damages for noneconomic loss as provided and limited in subsection (1).

(c) Damages for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly, and 3-year limitations contained in those sections. The party liable for damages is entitled to an exemption reducing his or her liability by the amount of taxes that would have been payable on account of income the injured person would have received if he or she had not been injured.

(d) Damages up to $400.00 to motor vehicles, to the extent that the damages are not covered by insurance. An action for damages pursuant to this subdivision shall be conducted in compliance with subsection (3).

(footnotes omitted).

struction and to secure indemnity for those injuries." *Standard Oil,* 332 U.S. at 306, 67 S.Ct. at 1607.

The government argues that the no-fault law should not be made applicable to the United States, because, in its view, the United States would be liable under the Federal Tort Claims Act for the negligence of its own drivers without respect to Michigan's No-Fault Act. The issue, we think, is less one of reciprocity of remedy than it is whether, in an area in which the United States has traditionally exercised its authority to seek recovery for damage to its own property caused by the negligence of another, that liability may be limited by a state's creation of an immunity by statute.

In *Standard Oil,* the enunciation of a new law of liability would have been required for relief, but the Court refused to create a new remedy in the absence of congressional action.[3] As negligence is admitted here, we are not required to devise new theories creating a right of recovery in the government. On the contrary, we are merely required to hold that in the interest of uniformity we need not recognize a limitation placed by state law upon a traditional right of recovery.[4] Under *Standard Oil,* the right of the federal government to protect its property and to seek recovery for its unlawful deprivation is essentially a matter of federal law, and all authorities have agreed that *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), has no place in such considerations.

We are pointed to no federal statute from which it may be inferred that Congress has consented to the application of state law in exempting motorists from liability to the United States for their negligent acts. Neither do we find that applying the no-fault law in this situation "furnish[es] convenient solutions in no way inconsistent with ade-

quate protection of the federal interest." *Standard Oil,* 332 U.S. at 309, 67 S.Ct. at 1609. Presumably there would be some reciprocal benefit in the legislative scheme of the no-fault statutes were the United States to acquire suitable "no-fault" insurance or otherwise to seek certification so as to bring itself within the statutory scheme. But to require the United States to comply with the varied insurance regulations of each of the fifty states as a condition to its historic right to obtain compensation for damage to its property would result "in substantially diversified treatment where uniformity is indicated as more appropriate, in view of the nature of the subject matter and the specific issues affecting the Government's interest." *Id.*

We are not called upon to address here the question of whether the "federal common law," as it is often called, should uniformly replace state law concepts of negligence, contributory negligence, or even comparative negligence with respect to the liability of individual citizens for damage to government property, absent some federal statute. Rather the issue here concerns the basic right of the government to be indemnified for its loss, a loss resulting from conduct that was negligent under state law. As the Supreme Court stated, "we know of no good reason why the Government's right to be indemnified ... should vary in accordance with the different rulings of the several states, simply because the soldier marches or today perhaps as often flies across state lines." *Standard Oil,* 332 U.S. at 310, 67 S.Ct. at 1609.

Our decision is based in part on our reluctance to require the federal government to comply with all of the statutory demands with respect to insurance coverage which Michigan now imposes upon its own registered motor vehicle owners. Indeed, the

---

**3.** Such action came in 1962 when Congress passed the Medical Care Recovery Act, 42 U.S.C. §§ 2651–53, giving the United States the right to recover from the tortfeasor the reasonable value of the medical care and treatment furnished by the United States to an injured person.

**4.** As the Court recognized in *Standard Oil,* "it has not been necessary for Congress to pass statutes imposing civil liability in those situations where it has been understood since the days of the common law that the sovereign is protected from tortious interference." 332 U.S. at 315 n. 22, 67 S.Ct. at 1612 n. 22.

**560**

insurance required by the No-Fault Act is itself part of the overall no-fault scheme of reimbursement for damages incurred in motor vehicle accidents. It would seem that the Act's express exclusion of the United States from compliance with its terms represents at least some recognition of the unique relationship between the federal government and the property which it owns on behalf of all of the people of the United States. We do not seek to extend the common law or to create new law but merely to preserve that which has historically existed. Therefore, the same concerns which may have justified the denial of federal relief in *Standard Oil* justify the rejection in this case of the application of a particularized state law which was probably never intended to apply to the United States.

Affirmed.