**WESTFIELD COMPANIES and Frankenmuth Mutual Insurance Co., Subrogee of Jim & Susan Mabee, d/b/a The Clothing Company, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

No. 1:92–CV–778.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 17, 1993.

---

**4.** For a concurring analysis see *Gilford v. Detroit Edison Company,* 846 F.Supp. 44, 46 (E.D.Mich. 1994).

Robert W. Grzech, DuBois, Westerman & Cooper, PC, Gaylord, MI, for plaintiffs.

John A. Wilson, Asst. U.S. Atty., Michael H. Dettmer, U.S. Atty., Grand Rapids, MI, for defendant.

## OPINION GRANTING DEFENDANT'S MOTION TO DISMISS

HILLMAN, Senior District Judge.

Before the court is defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(c) for lack of subject matter jurisdiction.

### FACTS

On or about December 9, 1990, a convoy of the United States Army Reserve 182nd Transport Company was passing through Charlevoix, Michigan, on its way from Traverse City, Michigan, to Fort McCoy, Wisconsin. The company was in the process of deploying to Saudi Arabia as part of Operation Desert Shield/ Desert Storm. In the convoy was a five-ton truck, bearing registration number X–107 USAR, driven by Sgt. Ramon Castillo. It was towing behind it a second inoperable five-ton truck, bearing registration number X–104.

The brakes on X–107 USAR suddenly failed. The truck and tow headed downhill toward the intersection of Mason and Bridge Street. The towed vehicle broke loose, crashing into a retail clothing store owned and operated by Jim and Susan Mabee, d/b/a The Clothing Company. The building sustained considerable damage.

The Clothing Company was insured under two separate business owners' protection policies issued by Westfield Companies and Frankenmuth Mutual Insurance Company. As subrogees of The Clothing Company, the two insurance companies assert that they have paid the sum of $134,265.87 to repair the building and reimburse the Mabee's. They now seek damages for the subrogated losses, claiming that the collision occurred as a result of defendant's negligence in failing to maintain control of the vehicles, failing to take reasonable action to avoid striking the building, and failing to operate the vehicles in a safe and prudent manner. They seek judgment against defendants in the amount of $76,002.00 for Westfield Companies, and $58,263.87 for Frankenmuth Mutual Insurance Company. They bring this action against the United States as subrogees pursuant to 28 U.S.C. § 2671, et seq., of the Federal Tort Claims Act ("FTCA") and its jurisdictional counterpart, 28 U.S.C. § 1346(b).

### DISCUSSION

It is well established that "the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). *See also Affiliated Ute Citizens of the State of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). An absolute prerequisite to maintaining an action against the United States is a specific waiver of sovereign immunity. 28 U.S.C. § 1346(b) grants the federal district courts jurisdiction to hear claims

... for ... personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government ...

under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 2674 also sets forth the limited waiver of immunity in pertinent part as follows: "The United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances...."

■ Therefore, to determine whether a tort action can be brought against the United States, the law of the state in which the act occurred is determinative. *See Frazier v. United States*, 412 F.2d 22, 23 (6th Cir.1969). It is undisputed that the law to be applied in this case is that of Michigan, since the accident and alleged negligence occurred in Michigan. The liability of the United States is to be determined as it would be for an individual defendant under the same circumstances.

## I.

■ At issue is the application of the Michigan No–Fault Automobile Insurance Act ("the No–Fault Act"), which became law on October 1, 1973. Plaintiffs initially contend that the No–Fault Act does not apply to the United States.

The Michigan No–Fault Act frequently has been applied to the United States in automobile-related accidents. *See e.g. Yeary v. United States*, 754 F.Supp. 546 (E.D.Mich. 1991); *McAdoo v. United States*, 607 F.Supp. 788 (E.D.Mich.1984); *Zotos v. United States*, 654 F.Supp. 36 (E.D.Mich.1986). In *Caruana v. United States*, an unpublished 1985 opinion by the late Honorable Philip Pratt of the United States District Court for the Eastern District of Michigan (Civil No. 81–71396, attached to the government's June 15, 1993, brief), the United States Postal Service was sued under the Federal Tort Claims Act for damages arising from an auto-related accident. Under the FTCA, the court was required to apply the applicable state law. The court applied the Michigan No–Fault Act, stating the following:

Plaintiff's counsel argues that "[t]he Michigan No–Fault Act has nothing to do with [this] cause," but does not state what law or legal standard would govern the damage question in the present case. Counsel relies on *U.S. v. Ferguson*, 727 F.2d 555 (6th Cir.1984), for the proposition that Michigan's No–Fault Act does not apply to an accident in Michigan involving a Michigan motorist and a postal service vehicle.

A careful reading of the *Ferguson* case discredits the argument advanced by plaintiff's counsel. In *Ferguson*, the Sixth Circuit faced a situation unlike the one now before the court. In that case, the federal government brought a negligence action against a Michigan driver in federal court. The issue was:

does Michigan's 'No–Fault' Automobile Insurance Act ... bar the United States from bringing a negligence action in federal court to recover damages to a government-owned vehicle caused by a collision in Michigan with a Michigan-registered motor vehicle?

In answering this question in the negative, the court emphasized that *Ferguson* involved the federal government's interest in preventing destruction of its property—not a question "which is primarily one of state interest or exclusively for determination by state law ..." 727 F.2d at 557. It was also noted that the issue was not the "fair and efficient recovery of accident damages by a Michigan resident, but whether ... the Government may obtain recovery for damage to its property." *Id.*

This language makes clear that the Sixth Circuit's opinion in *Ferguson* is not applicable to the present case. Plaintiff's assertion that Michigan's No–Fault Act is inapplicable to its damage suit against the government arising from a Michigan accident is unsupported.

*Caruana*, at page 2, n. 1.

Plaintiffs additionally contend that the Michigan No–Fault Act does not apply to defendant United States because the No–Fault Act specifically provides that "the owner or registrant of a motor vehicle required to be registered in this state shall maintain

security for payment of benefits." Plaintiffs argue that since the Michigan State Legislature has exempted from registration "any vehicle owned by the government of the United States" under the Michigan Motor Vehicle Act, M.C.L. § 257.216(f), the Michigan No–Fault Act is therefore inapplicable to the United States.

This court disagrees. In *Zotos v. United States,* 654 F.Supp. 36, 38 (E.D.Mich.1986), the court rejected as a restrictive statutory construction the argument that an exemption of registration of government vehicles implied that the Michigan No–Fault Act was not intended to cover the United States. *See Zotos,* (citing *Lee v. Detroit Automobile Inter–Ins. Exchange,* 412 Mich. 505, 315 N.W.2d 413 (1982)). The Michigan Supreme Court in *Lee* rejected plaintiffs' assertion that registration of a "motor vehicle" is mandatory in order for the No–Fault Act to be applicable.

This court finds Michigan's No–Fault Act to be applicable to the United States of America.

## II.

■ Arguing the alternative, plaintiffs next contend that if the No–Fault Act does apply, the United States should be treated as an uninsured entity under section 500.3101 of the Act. The government responds that while the federal government does not purchase automobile insurance as an individual would, it has enacted 28 U.S.C. § 2679(b), which states that the United States will step into the shoes of and defend federal government employees operating motor vehicles who are acting within the scope of their employment. As the government stated in its brief, "full faith and credit of the United States and its Treasury stand behind government employees who operate motor vehicles. To treat the United States as an uninsured individual is simply absurd."

This court agrees that the government should not be treated as an uninsured entity, but should be treated as a self-insured entity for purposes of Michigan's No–Fault Act. Because the government is not required to register its vehicles in Michigan, it is not required to obtain personal protection insur-

ance, property insurance, and residual liability insurance pursuant to M.C.L. § 500.-3101(1). Instead, the government falls under M.C.L. § 500.3101(4), which states:

Security required by subsection (1) may be provided by any other method approved by the secretary of state as affording security equivalent to that afforded by a policy of insurance, if proof of the security is filed and continuously maintained with the secretary of state throughout the period the motor vehicle is driven or moved upon a highway. The person filing the security has all the obligations and rights of an insurer under this chapter. When the context permits, "insurer" as used in this chapter, includes any person filing the security as provided in this section.

M.C.L. § 500.3101(4).

This court finds that 28 U.S.C. § 2679 serves as "equivalent security" which, under the Supremacy Clause, the Michigan Secretary of State would be obliged to accept. The United States, for purposes of Michigan's No–Fault Act, is to be treated as an insured entity.

## III.

Finally, plaintiffs argue that the government is not entitled to immunity from tort liability under M.C.L. § 500.3135(2). The government strenuously objects, on the theory that the government has satisfied one of the alternate conditions required by M.C.L. § 500.3135(2) for tort immunity by providing adequate security pursuant to M.C.L. § 500.-3104(4). This court finds that resolution of this issue is not necessary to the resolution of the case because questions of property damage are covered under other sections of the No–Fault code, specifically M.C.L. §§ 500.-3121 and 500.3123.

Under M.C.L. § 500.3101, three types of insurance coverage are necessary to satisfy the requirements of the No–Fault Act: personal protection insurance, property protection insurance, and residual liability insurance. The purpose of property protection insurance, as stated by M.C.L. § 500.3121(1), is

to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle subject to the provisions of this section and sections 3123, 3125, and 3127.

M.C.L. § 500.3121(1). While M.C.L. § 500.3121 gives a general grant of property protection, various kinds of property are subsequently excluded from protection by M.C.L. § 500.3123. Subsection (3) excludes utility transmission lines if such lines do not comply with the requirements of M.C.L. § 247.186. Subsection (2) excludes property outside the state of Michigan. Subsection (1)(b) excludes property owned by a person named in a property protection insurance policy if the named person was the owner, registrant, or operator of a vehicle involved in the motor vehicle accident out of which the property damage arose. The exclusion most commonly encountered is M.C.L. § 500.3123(a)(1):

> Vehicles and their contents, including trailers, operated or designed for operation upon a public highway by power other than muscular power, unless the vehicle is parked in a manner as not to cause unreasonable risk of the damage which occurred.

M.C.L. § 500.3123(a)(1).

It is this exclusion which was involved in the case cited by the government, *Pioneer State Mut. Ins. v. Allstate Ins. Co.*, 107 Mich. App. 261, 309 N.W.2d 598, *aff'd*, 417 Mich. 590, 339 N.W.2d 470 (1983). Here, the court considered the claim of the owner of a farm tractor which was damaged when it was hit from behind by an automobile. The insurer of the tractor paid for repairs and then as subrogor sought to recover from the automobile driver's No–Fault carrier. The court found that for purposes of M.C.L. § 500.3123(1)(a), there was no difference between "vehicles" not required to be registered and "motor vehicles" required to be registered, and therefore required to maintain no-fault insurance pursuant to M.C.L. § 500.3101(1). For this reason, the court held that the M.C.L. § 500.3123(1)(a) exclusion applied and that No–Fault *property* insurance did not cover the claim.

A wholly different situation exists when none of the M.C.L. § 500.3123 exclusions ap-

ply. For example, in *Chesapeake and Ohio Railway Co. v. St. Paul Fire and Marine Ins. Co.*, 701 F.2d 573 (6th Cir.1983), the court considered the claim of a railroad whose property and equipment was damaged when it was struck at a crossing by a truck. Here, the court found that a train was not a vehicle being operated on a public highway and rejected the defendant-appellant's argument that the M.C.L. § 500.3123(1)(a) exclusion applied. Under M.C.L. § 500.3121, the court awarded damages of $700,000.

Such a difference in outcome based on whether the property was a vehicle being operated on a public highway or not has been found constitutional by the Michigan Courts. In the seminal case of *Shavers v. Attorney General*, 402 Mich. 554, 267 N.W.2d 72 (1978), the court evaluated a number of challenges to the Michigan No–Fault Act. Plaintiff alleged that the legislature had violated equal protection by providing that persons whose vehicular property was damaged as a result of a motor vehicle accident would be compensated only if they purchased optional collision insurance but, persons whose tangible property was damaged as a result of a motor vehicle accident would compensated, regardless of fault, through third party property damage insurance required to be carried by the owner or driver of the motor vehicle that inflicted the damage. The court noted that

> Common sense would indicate, and actuarial studies have shown, that in accidents involving motor vehicles and tangible property, the motor vehicle is usually at fault. Consequently, the act makes the motorist strictly liable for the damage he does to tangible property and requires him to purchase insurance for such damage.

*Shavers* 267 N.W.2d at 103. The court consequently held the classification rational.

Turning to the claim before this court, there can be no dispute that the building struck by truck X–104 after it broke loose from truck X–107 USAR driven by Sgt. Roman Castillo in Charlevoix, Michigan, is not subject to any of the exclusions of M.C.L. § 500.3123. Neither can there be any dispute as to the fact that both truck X–104 and truck X–107 USAR were owned and operat-

ed by agents of the United States Government while in the course of their employment. This court therefore concludes that just as any citizen of Michigan would be liable under the No–Fault Act for the property damaged caused by their vehicle, so also the United States could be found liable under the No–Fault Act for the damage caused to the building of Jim and Susan Mabee, housing The Clothing Company.

## IV.

■ This court determines, however, that the United States may not be held liable for the damage caused to the building of Jim and Susan Mabee, housing The Clothing Company, pursuant Federal law. As noted above, an absolute prerequisite to maintaining an action against the United States is a specific waiver of sovereign immunity. The waiver of immunity, 28 U.S.C. § 1346(b), expressly requires as an element of the claim proof of either negligence or wrongfulness. This has been interpreted by the courts to bar actions against the federal government based on strict liability. *See,* e.g., *Lively v. United States,* 870 F.2d 296 (5th Cir.1989). This waiver, pursuant to 28 U.S.C. § 2679(b)(1), is the exclusive remedy for property damage resulting from the operation by any employee of the federal government of a motor vehicle.

The No–Fault law is essentially a strict liability statute. Property damages under M.C.L. § 500.3121 are to be paid regardless of fault; the code specifies that "property protection insurance benefits are due under the conditions stated in this chapter without regard to fault." M.C.L. § 500.3121(2). Inasmuch as the goal of the No–Fault Act was to provide victims of motor vehicle accidents with assured, adequate, and prompt reparation, no provision was made for bringing a cause of action based in negligence. Plaintiff's only remedy under the No–Fault Act is in strict liability.

Consequently, this court holds that United States has not granted a specific waiver of sovereign immunity which would allow the instant suit to be brought. Therefore, this court has no subject matter jurisdiction.

## CONCLUSION

In summary, I conclude that:

1. The Michigan No–Fault Insurance Act is applicable to the United States;

2. The United States is to be treated as an insured entity;

3. A private individual would be liable under the facts of this case for the damages caused;

4. Because a private individual would be liable only on the basis of strict liability, and no waiver of governmental immunity exists for such cases, this court has no subject matter jurisdiction.

Accordingly, the motion of the United States for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is hereby granted.