RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0085p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JOELLE PREMO,
          *Plaintiff-Appellant/Cross-Appellee,*

                    *v.*

UNITED STATES OF AMERICA; UNITED STATES
POSTAL SERVICE; JOHN DOE, an unidentified
Postal Service truck driver,
          *Defendants-Appellees/Cross-Appellants.*

Nos. 09-1426/1427

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-13188—Avern Cohn, District Judge.

Argued: March 5, 2010

Decided and Filed: March 30, 2010

Before: CLAY and McKEAGUE, Circuit Judges; POLSTER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Lawrence T. Garcia, ALLEN BROTHERS, PLLC, Detroit, Michigan, for Appellant. Sushma Soni, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Lawrence T. Garcia, ALLEN BROTHERS, PLLC, Detroit, Michigan, for Appellant. Sushma Soni, Thomas M. Bondy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

_____

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**OPINION**

---

CLAY, Circuit Judge. Plaintiff Joelle Premo appeals the district court's determination that pursuant to the Federal Tort Claims Act, 28 U.S.C.A. § 2671, *et seq.*, Michigan state law, which in this case is the Michigan No-Fault Automobile Insurance Act, Mich. Comp. Laws Ann. § 500.3101, *et seq.*, applies to Premo's claim for personal injury benefits against the government. Plaintiff also appeals the district court's denial of her request for interest and attorneys' fees. For the following reasons, we **AFFIRM** in part and **REVERSE** in part the district court's decision.

## I. STATEMENT OF FACTS

### A. Factual Background

On August 7, 2006, Joelle Premo, then 19 years old, was riding her bicycle in Royal Oak, Michigan. While riding through a cross walk, Premo was struck by a United States Postal Service ("USPS") postal truck and injured. She suffered multiple leg, ankle, and foot fractures that required surgery.

Premo does not own an automobile and thus, does not have automobile insurance. Consequently, Premo was unable to claim insurance benefits from her own insurance company. On September 6, 2006, Premo's counsel contacted the USPS to file a claim for insurance benefits, pursuant to the Michigan No-Fault Automobile Insurance Act ("No-Fault Act"), Mich. Comp. Laws Ann. ("M.C.L.A.") § 500.3101, *et seq*., under the postal service's insurance plan. The USPS declined Premo's request for benefits in a letter dated September 15, 2006. The letter stated, *inter alia*, the following:

> The United States Postal Service is self-insured and does not carry insurance on its motor vehicles because it is exempt from the requirements of state vehicle insurance statutes. In the most general of terms, the Supremacy Clause of the United States Constitution does not allow a state to regulate the actions of any arm of the federal government,

unless, of course, the federal government agrees to allow that regulation. No such allowance has been provided in this instance.

There is one relevant exception to the United States' sovereign immunity from claims of any kind. The Federal Tort Claims Act ("FTCA"), codified at 28 U.S.C. 2671-80, provides the exclusive means of pursuing a claim against the federal government based on the **negligence of one of its agencies or their employees.** 28 U.S.C. 2679(b)(1). Therefore, Michigan No-Fault does not apply to the United States Postal Service. Accordingly, the Postal Service declines Ms. Premo's request for benefits from the Postal Service.

If it is your intent to present an administrative tort claim with the United States Postal Service under the provisions of the Federal Tort Claims Act, the claim must conform in all respects with Title 28, United States Code, § 1346, 2671-2680 and Title 28, Code of Federal Regulations, Part 14. Accordingly, each claim should state, with specificity, sufficient facts to allow the government to investigate its liability and a "sum certain" amount for injuries or losses alleged to have occurred by reason of the incident. Please note that "sum certain" is the term used to identify the amount of damages the claimant seeks to resolve the dispute. Further, it should be accompanied by supportive documentation, and exhibit an original ink signature.

Plaintiff filed an FTCA administrative claim with the USPS, seeking $197,569.80 for personal injury and the property damage to her bicycle. The agency denied Premo's claim on May 18, 2007, stating: "an investigation into [the accident] failed to establish a negligent act or omission on the part of the U.S. Postal Service or its employees. While we regret any injury that may have occurred, we cannot accept legal liability for these alleged damages. Accordingly, this claim is denied." Plaintiff did not subsequently apply for insurance benefits under Michigan's assigned claims plan.

## B.     Procedural History

Plaintiff filed suit in U.S. district court against the United States, the USPS, and "John Doe"[1] on July 31, 2007 pursuant to the Federal Tort Claims Act, 28 U.S.C.A. 2671, *et seq.*, seeking economic and non-economic damages resulting from the driver's alleged negligence. After discovery concluded, the government moved for summary

---

[1] John Doe is the unidentified USPS employee driving the truck that struck Premo.

judgment, arguing that: (1) the Michigan No-Fault Act was applicable and therefore, Plaintiff could not recover economic damages; and (2) Plaintiff had not demonstrated that she met the threshold to receive non-economic damages under Michigan law.

On October 2, 2008, the district court granted in part and denied in part the government's motion for summary judgment. The district court determined that: (1) Michigan's No-Fault Act applied, (2) the government was not estopped from arguing that the No-Fault Act applied, (3) Plaintiff failed to meet the standard necessary to recover non-economic damages, and (4) the case would go forward as to the government's liability and Premo would be entitled to economic damages if such liability were established.

On October 14, 2008, Premo moved for summary judgment on her claim for $34,018.62 in economic damages, which included $33,768.62 in medical expenses and $250 in property damage, and requested $8,654.33 in interest and $50,000 in attorneys' fees. On February 3, 2009, the district court granted in part and denied in part Plaintiff's motion, finding that Plaintiff was entitled to the $34,768.62 in economic damages but denying her request for interest and attorneys' fees. Plaintiff filed a motion to reconsider, which was denied. Plaintiff appeals the district court's: (1) application of Michigan's No-Fault Act to her claim and (2) denial of her request for interest and attorneys' fees.[2] The government appeals the district court's award of economic damages to Plaintiff.

## II. DISCUSSION

### A.      Standard of Review

This Court reviews *de novo* a district court's grant or denial of summary judgment. *Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 616 (6th Cir. 2003). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The

---

[2]Plaintiff does not appeal the district court's grant of summary judgment on her claim for non-economic damages.

Court reviews the issue of sovereign immunity and whether the government can be held liable under the Federal Tort Claims Act *de novo*. *See Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995) ("Whether the United States can be held liable under the Federal Tort Claims Act for basic reparation benefits . . . under the Kentucky no-fault statute is a question of law that we review *de novo*."); *see also Bowling Green v. Martin Land Dev. Co.*, 561 F.3d 556, 558 (6th Cir. 2009) ("Because the district court's decision turned on its interpretation of a federal statute, . . . this Court reviews that question of law *de novo*.).

### B.     Requirements under the Federal Tort Claims Act

Sovereign immunity prevents suit against the United States without its consent. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The Federal Tort Claims Act ("FTCA") waives sovereign immunity for certain actions in tort by giving district courts exclusive jurisdiction over those types of civil actions. Under the FTCA, the government may be liable

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, . . . if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C.A. § 1346(b)(1). The FTCA "was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Richards v. United States*, 369 U.S. 1, 6 (1962). The FTCA "neither creates causes of action against the United States nor provides a means of enforcing federal statutory duties. Rather, it 'constitutes consent to suit and is fundamentally limited to cases in which a private individual [would be liable] under like circumstances.'" *United States v. Cundiff*, 555 F.3d 200, 217 (6th Cir. 2009) (alteration in original). Although the United States government may be liable "in the same manner and to the same extent as a private individual under like circumstances," the government is not liable for pre-judgment interest or for punitive damages. 28 U.S.C.A. § 2674.

Claims under the FTCA involve a two-step analysis. "First the district court applies local law to determine liability and to assess damages. Second, federal law is invoked to bar proscribed recoveries, such as punitive damages." *Palmer v. United States*, 146 F.3d 361, 366 (6th Cir. 1998) (quoting *Kirchgessner v. United States*, 958 F.2d 158, 159 (6th Cir. 1992)); *see Richards*, 369 U.S. at 10 ("We conclude that Congress has, in the Tort Claims Act, enacted a rule which requires federal courts . . . to look in the first instance to the law of the place where the acts of negligence took place."). Thus, liability under the FTCA is usually determined by referencing state law. *Molzof v. United States*, 502 U.S. 301, 305 (1992). Because the alleged act of negligence took place in Michigan, we must look to Michigan law.

Under Michigan's No-Fault Act, "victims of motor vehicle accidents . . . receive insurance benefits for their injuries as a substitute for their common-law remedy in tort." *Kreiner v. Fischer*, 683 N.W.2d 611, 617 (Mich. 2004). The No-Fault Act provides that "[t]he owner or registrant of a motor vehicle required to be registered[3] . . . shall maintain security for payment of benefits under personal protection insurance . . . ." M.C.L.A. § 500.3101(1). In accordance with personal protection insurance ("PIP"), "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." *Id.* § 500.3105(1). The No-Fault Act specifically provides that "tort liability arising from the ownership, maintenance, or use . . . of a motor vehicle . . . is abolished," except in cases of: (1) intentional harm; (2) damages for non-economic loss; (3) damages for allowable expenses, work loss, and survivor's loss in excess of the daily, monthly, and 3-year limitations; (4) damages for economic loss by a non-resident in excess of the PIP

---

[3]Pursuant to Michigan law, federal government vehicles are not required to be registered in Michigan. M.C.L.A. § 257.216(f). Thus, Michigan's No-Fault Act does not directly apply to the United States government, but the statute still governs the outcome pursuant to the FTCA. *See Westfield Cos. v. United States*, 858 F. Supp. 658, 661 (E.D. Mich. 1993) ("This court finds Michigan's No-Fault Act to be applicable to the United States of America."); *Zotos v. United States*, 654 F. Supp. 36, 38 (E.D. Mich. 1986) (citing *Lee v. Detroit Auto. Inter-Ins. Exch.*, 315 N.W.2d 413, 416 (Mich. 1982)) (noting that non-registered vehicles are covered by Michigan's No-Fault Act). Because the federal government is exempted from the registration requirement, the government is considered a self-insurer. *See Westfield*, 858 F. Supp. at 661 (stating that the federal government should be treated as a self-insured entity for purposes of the No-Fault Act).

benefits provided under the statute; and (5) damages up to $500.00 to motor vehicles, to the extent that such damages are not covered by insurance. *Id.* § 500.3135(3).

Pursuant to Michigan's No-Fault Act, all owners of motor vehicles must self-insure or obtain a no-fault insurance policy to ensure a source of recovery for PIP benefits. *Id.* § 500.3101(1), (3)-(4). As a result, an injured party typically claims PIP benefits from his or her own insurer. *See Kreiner*, 683 N.W.2d at 616. If the injured party suffers accidental bodily injury while not in a motor vehicle, that person must claim PIP benefits from insurers in the following priority: (1) the insurer of the owner or registrant of the vehicle involved in the accident; (2) the insurer of the operator of the motor vehicle involved in the accident. M.C.L.A. § 500.3115(1).

If no PIP benefits are available from either of these sources, the injured party can obtain PIP benefits through Michigan's assigned claims plan as long as benefits are sought within the one-year statute of limitations. *Id.* §§ 500.3172(1), 500.3145(1), 500.3174. Under the state assigned claims plan, the assigned claims facility makes an initial determination of the claimant's eligibility for PIP benefits, denying obviously ineligible claims. *Id.* § 500.3173a. Claims are then assigned to an insurer for the payment of benefits. *Id.* § 500.3172(3)(b).

Plaintiff argues that Michigan's No-Fault Act should not apply for three reasons: (1) "the Government failed to timely raise [the] No-Fault [statute] as an affirmative defense, and it should not have been permitted to rely on the argument without first obtaining leave to amend its pleadings"; (2) "in order to avoid diverse treatment of federal interests in the several states" and avoid running afoul of federal supremacy; and (3) "the Government must be estopped from relying on the No-Fault statute in this case, because it officially maintained that the statute did not apply (under the Constitution's Supremacy Clause) for more than a year before inexplicably requesting that No-Fault law be applied." (Appellant's Br. 18.)

We find each of these arguments unconvincing. The No-Fault statute is not an affirmative defense, but rather, represents the governing law in this case. The FTCA expressly states that the choice of law for a claim filed pursuant to the FTCA depends

on the location of the allegedly tortious act. *See* 28 U.S.C.A. § 1346(b)(1). Accordingly, the statute specifically contemplates diverse treatment by the states. In support of her federal supremacy argument, Premo relies on the Supreme Court's decision in *United States v. Standard Oil Co.*, 332 U.S. 301 (1947), and this Court's decision in *United States v. Ferguson*, 727 F.2d 555 (6th Cir. 1984). Such reliance is misplaced.

In *United States v. Standard Oil Co.*, the Supreme Court held that federal law applied to a suit initiated by the United States to recover monies spent on hospitalization and pay for a soldier hit by a Standard Oil Company truck. In holding that federal law applied to the lawsuit, the Court noted that "the scope, nature, legal incidents and consequences of the relation between persons in service and the Government are fundamentally derived from federal sources and governed by federal authority." 332 U.S. at 305-06. The Court also noted that since "the Government's purse is affected, as well as its power to protect the relationship, its fiscal powers, to the extent that they are available to protect it against financial injury" weighed against permitting state intrusion. *Id.* at 306. In other words, the Supreme Court relied on the uniquely federal relationship between the United States government and military personnel and the effect on the government's purse.

In *United States v. Ferguson*, this Court held that Michigan's No-Fault Act did not bar the United States from bringing suit for damage to a government motor vehicle. 727 F.2d at 560. In so holding, the Court noted that "[r]ights and responsibilities in the ownership of Government property are essentially of a federal character" and "vitally affect the interests, powers, and relations of the Federal government so as to require uniform national disposition rather than diversified state rulings." *Id.* at 557. Neither *Standard Oil* nor *Ferguson* involved a matter primarily of state interest. Plaintiff points to a statement by the *Ferguson* court that the No-Fault Act "was probably never intended to apply to the United States." *Id.* at 560. However, in context, it seems clear that the Court was referring to the United States bringing suit as a plaintiff. Indeed, the *Ferguson* court noted that "[t]he liability sought [was] not essential or even relevant to protection of the state's citizens against tortious harms." *Id.* at 557. The *Ferguson* court

also indicated that its holding would not apply in a case where the issue was "the fair and efficient recovery of accident damages by a Michigan motorist." *Id.*

Finally, Plaintiff's contention that the government is estopped from relying on the No-Fault Act fails as well. "Estoppel is an equitable doctrine which a court may invoke to avoid injustice in particular cases." *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004) (internal quotation marks omitted). The elements of an estoppel claim are: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Id.* However, the government "may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 60 (1984). A party attempting to estop the government "bears a very heavy burden." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001). At a minimum, Plaintiff must show some "affirmative misconduct" by the government in addition to establishing the other elements of estoppel. *Id.* Affirmative conduct "is more than mere negligence. It is an act by the government that either intentionally or recklessly misleads the claimant." *Michigan Express*, 374 F.3d at 427.

Premo cannot sustain her burden to estop the government. First, Premo cannot establish any misrepresentation. The letter the government sent to Premo correctly stated that the No-Fault Act does not apply to the USPS and then provided instructions regarding the requirements for Premo to bring an FTCA claim. The government's position here is not that the No-Fault Act directly applies, but that pursuant to the FTCA, the determination regarding Premo's claim turns on state law, which, in this case happens to be the No-Fault Act. Even if, *arguendo*, the government's letter can be deemed confusing, Plaintiff's argument still fails. *See Michigan Express*, 374 F.3d 427-28 ("It is true that the government could have worded the letter better . . . . But, the failure to explain is at best a negligent error, not a reckless one."). Premo also fails to point to any act by the government that constitutes affirmative misconduct. Consequently, we conclude that the district court properly determined that pursuant to

the FTCA, the government's liability in this case must be determined in accordance with applicable Michigan law, which is set forth in the No-Fault Act.

### C.     The Application of Michigan State Tort Law

The FTCA should be interpreted broadly to effectuate the legislative aim of putting the United States on equal footing with citizens in tort cases. *Owen v. United States*, 935 F.2d 734, 737 (5th Cir. 1991). However, "[i]n analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign . . . and not enlarge the waiver 'beyond what the language requires.'" *Library of Cong. v. Shaw*, 478 U.S. 310, 318 (1986) (citations omitted) (internal quotation marks omitted); *accord Block v. North Dakota*, 461 U.S. 273, 287 (1983) ("[W]hen Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied."); *Blakely v. United States*, 276 F.3d 853, 864 (6th Cir. 2002) ("[T]he circumstances of [the waiver of sovereign immunity] must be scrupulously observed and not expanded by the courts.") (alteration in original).

Under the FTCA, the government may be liable "for . . . personal injury or death *caused by the negligent or wrongful act or omission* of any employee of the Government." 28 U.S.C.A. § 1346(b)(1) (emphasis added). The Supreme Court has stated that "the statutory language 'negligent or wrongful act or omission of any employee of the Government' is a uniform federal limitation on the types of acts committed by its employees for which the United States has consented to be sued." *Laird v. Nelms*, 406 U.S. 797, 799 (1972). Accordingly, "the Federal Tort Claims Act itself precludes the imposition of liability if there has been no negligence or other form of 'misfeasance or nonfeasance.'" *Id.* The FTCA's waiver of sovereign immunity does not extend to claims grounded in strict liability. *See Chancellor v. United States*, 1 F.3d 438, 440 (6th Cir. 1993) (noting that "the Supreme Court has concluded that the United States is not liable under the FTCA for claims grounded in strict liability.")

Pursuant to the No-Fault Act, a person injured can collect PIP benefits "without regard to fault." M.C.L.A. § 500.3105(2). Given this language, "[a]bsolute liability . . .

arises irrespective of how the tortfeasor conducts himself . . . . The degree of care used in performing the activity is irrelevant . . . ." *Dalehite v. United States*, 346 U.S. 15, 44-45 (1953). Thus, Michigan law imposes strict liability for economic damages in motor vehicle accident cases. *See Kreiner*, 683 N.W.2d at 616.

The No-Fault Act's imposition of liability without regard to fault conflicts with the FTCA's express language. The FTCA dictates that the federal government be liable in tort "in the same manner and to the same extent that state law would impose liability on a private individual in similar circumstances." *Huffman v. United States*, 82 F.3d 703, 705 (6th Cir. 1996). In other words, the FTCA "waives sovereign immunity to the extent that state-law [sic] would impose liability on a private individual in similar circumstances." *Chomic v. United States*, 377 F.3d 607, 609-10 (6th Cir. 2004) (quoting *Young*, 71 F.3d at 1241).

In awarding Premo economic damages, the district court relied on two Michigan district court cases. In *McAdoo v. United States*, 607 F. Supp. 788, 790 (E.D. Mich. 1984), a plaintiff was injured when his car was struck by a government truck. The plaintiff sued the government under the FTCA, seeking damages. *Id.* The district court applied the No-Fault Act to the plaintiff's non-economic damages claim and declined to award damages, finding that the plaintiff's injuries did not satisfy the threshold of serious impairment of body function necessary for non-economic damages claims. *Id.* at 796. The *McAdoo* court did, however, award the plaintiff damages related to his inability to work. *Id.* at 799.

In *Contreras v. United States*, No. 1:03-CV-360, 2004 WL 3457632, at *1 (W.D. Mich. Oct. 26, 2004), the plaintiff was rear-ended by a USPS truck and sued for damages pursuant to the FTCA. The government moved for partial summary judgment on the plaintiff's non-economic damages claim, arguing that her injuries did not meet the standard required for the award of non-economic damages. *Id.* at *4. The district court denied the government's motion, finding a genuine issue of material fact regarding whether the plaintiff satisfied the threshold to obtain a non-economic damages award. *Id.* at *7.

We find both cases inapposite as neither explains why economic damages are permitted despite language of the Supreme Court specifically noting that "the Federal Tort Claims Act itself precludes the imposition of liability if there has been no negligence or other form of 'misfeasance or nonfeasance.'" *Laird*, 406 U.S. at 799. Another district court expressly confronted this issue. In *Westfield Cos. v. United States*, 858 F. Supp. 658 (W.D. Mich. 1993), the district court held that because Michigan's No-Fault Act is essentially a strict liability statute, the plaintiff's only remedy under the No-Fault Act was in strict liability. 858 F. Supp. at 663. Consequently, concluded the district court, the United States had not granted a specific waiver of sovereign immunity that would allow the lawsuit to proceed. *Id.*

We find the *Westfield* approach to be consistent with the express language of the FTCA and with Supreme Court and Sixth Circuit precedent.[4] Because the government can be held liable without a finding of fault pursuant to the No-Fault Act, Plaintiff cannot recover economic damages. *See United States v. Taylor*, 236 F.2d 649, 653 (6th Cir. 1956) ("Assuming that a private individual in the government's position would be absolutely liable . . . , it does not follow that the United States is therefore liable under the provisions of the Federal Tort Claims Act . . . . [S]tate law imposing . . . absolute liability under any circumstances, is inapplicable and irrelevant."). Plaintiff's source of relief for economic damages was Michigan's assigned claims plan, a remedy which she failed to pursue. Because Plaintiff cannot recover economic damages, we also conclude that the district court properly denied her requests for penalty interest and attorneys' fees.

### III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's conclusion that Michigan's No-Fault Act, through the Federal Tort Claims Act, governs the outcome of this case; **REVERSE** the district court's grant of economic damages to Plaintiff; and

---

[4]The district court below distinguished *Westfield* on the grounds that the case involved property damage rather than personal injury, but we see no need for that distinction.

**AFFIRM** the district court's determination that Plaintiff was not entitled to interest and attorneys' fees.