Violet KEENER, Petitioner,

v.

EASTERN ASSOCIATED COAL CORPORATION, Director, Office of Workers' Compensation Programs, United Statements Department of Labor, Respondents.

No. 91–2617.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 28, 1991.

Decided Jan. 15, 1992.

As Amended March 2, 1992.

Robert F. Cohen, Jr., Cohen, Abate & Cohen, Fairmont, W.Va., argued, for petitioner.

Mark Elliott Solomons, Arter & Hadden, Washington, D.C., argued, for respondent Eastern Associated Coal Corp., Roger Pitcairn, Office of the Sol., U.S. Dept. of Labor, Washington, D.C., argued, for respondent Director, Office of Workers' Compensation Programs (David S. Fortney, Deputy Sol. of Labor, Donald S. Shire, Associate Sol., Michael J. Denney, Counsel for Appellate Litigation, Office of the Sol., U.S. Dept. of Labor, Washington, D.C., on brief, for respondent Director, Office of Workers' Compensation Programs).

Before WIDENER and LUTTIG, Circuit Judges, and RESTANI, Judge, Court of International Trade, sitting by designation.

## OPINION

LUTTIG, Circuit Judge:

The Benefits Review Board of the Department of Labor affirmed a Department of Labor Administrative Law Judge's decision denying Violet Keener survivor benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945. Mrs. Keener petitions for review of that decision on the ground that it lacked substantial evidentiary support in the record. We affirm the decision of the Benefits Review Board.

### I.

Bernard Keener, who mined coal for at least forty years before his death in 1987, applied to the Department of Labor's Office of Workers' Compensation Programs (OWCP) for black lung benefits on December 28, 1978, at the age of fifty-nine. At the time, Mr. Keener believed that he had contracted what is known as "simple" pneumoconiosis. Three weeks later, on January 17, 1979, Monna Ashley, a claims examiner in the OWCP, advised Keener and petitioner, Keener's wife, that a working miner suffering from "simple" rather than "complicated" pneumoconiosis must cease work in the coal mine after he is informed that he is entitled to benefits. The parties disagree over whether Ashley advised the Keeners that Keener must cease work within one year of "notice of award," *see* J.A. at 5, within one year of a "final determination" of benefits eligibility, or within one year of the filing of his claim. Ashley also advised the couple that Keener could reapply for benefits within three years of a determination that he had become totally disabled due to pneumoconiosis.

Keener thereafter decided to withdraw his application for benefits, and on January 22, 1979, he signed an OWCP claim withdrawal form which included the following statement:

> This is to certify that I have been informed of the requirement of a miner to claim black lung benefits within three (3) years of the date on which the miner is determined to be totally disabled due to pneumoconiosis. Further, I understand that a miner cannot receive black lung benefits while he still works in a coal mine unless he suffers from complicated pneumoconiosis.
>
> As I am currently employed in a coal mine and have no intention of ceasing my employment in the foreseeable future, and, as I do not believe I am suffering from complicated pneumoconiosis currently, I wish to withdraw my application for black lung benefits. I understand that I may cancel my request for withdrawal at anytime before it is approved. I understand that this will protect my right to file a claim in the future, when I am better prepared to meet all factors of entitlement.

*Id.* at 8. By letter dated January 23, 1979, Ashley formally approved Keener's applica-

tion withdrawal request. That letter read in relevant part as follows:

> This is to inform you that your request for withdrawal of your claim for black lung benefits filed on January 22, 1979, has been received and reviewed by this office. It has been determined that the request is proper and in your best interest and is, therefore, formally approved.

*Id.* at 9.

Keener continued to work in the coal mine for some five years. On February 1, 1984, having ceased work because of health problems, he reapplied for black lung benefits. OWCP notified respondent Eastern Associated Coal Corporation (EACC) that EACC would be responsible for the payment of any benefits to which Keener was entitled. And on September 13, 1984, OWCP awarded Keener black lung benefits based upon his total disability due to pneumoconiosis. EACC contested the award, and OWCP forwarded Keener's case to a Department of Labor Administrative Law Judge (ALJ) for a formal hearing.

On January 23, 1987, before a hearing was held by the ALJ, Keener died of a heart attack. Petitioner thereafter applied to the OWCP for black lung survivor benefits. On July 22, 1987, the Deputy Commissioner of the OWCP denied petitioner's claim because her husband's death was not caused by pneumoconiosis. *See infra* note 1. Petitioner sought a hearing before the ALJ and, upon request of the parties, her claim was consolidated with that of her husband.

Petitioner argued before the ALJ *inter alia* that her husband's withdrawal of his 1978 benefits claim was invalid because he had been misinformed by Ashley that he was required by Department of Labor regulations to cease work within one year of filing a claim for disability benefits.[1] Although the ALJ awarded benefits to the Keeners, he rejected the contention that Keener's withdrawal of his 1978 claim was invalid without explicitly addressing petitioner's claim that Ashley had misinformed Keener as to the law. Because the ALJ's decision and order did not specify which of the Keeners' applications had been approved, or whether both had been approved, the Director of OWCP moved for reconsideration. Upon reconsideration, the ALJ clarified that he had approved Mr. Keener's application, but denied petitioner's application on the ground that her husband's death had not been caused by pneumoconiosis. *See* J.A. at 82–83.

Petitioner appealed the denial of her claim to the Benefits Review Board. On January 11, 1991, the Board affirmed the ALJ's decision and order, concluding that the ALJ did not abuse his discretion in finding that Mr. Keener had validly withdrawn his 1978 claim. *Keener v. Eastern Associated Coal Corp.,* BRB No. 88–2156 BLA and 88–2156 BLA/A (Jan. 11, 1991) (unpublished).[2]

On March 3, 1991, Mrs. Keener petitioned this court for review of the Board's decision.[3]

---

**1.** Petitioner challenged the validity of her husband's withdrawal of his 1978 claim because under the applicable law at the time of that withdrawal, a survivor could receive derivative benefits if his or her spouse had died from black lung disease *or* was totally disabled by the disease. *See* Pub.L. No. 92–303, § 4(b)(2), 86 Stat. 153, 154 (1972); 20 C.F.R. § 725.-212(a)(3)(ii); *Pothering v. Parkson Coal Co.,* 861 F.2d 1321, 1326–28 (3d Cir.1988). By the time that Keener reapplied for benefits, however, the law had been amended to eliminate "total disability" as a ground for a survivor's recovery. Under the amended statute, a survivor can receive benefits only if the death of his or her spouse was caused by pneumoconiosis. *See* Pub.L. No. 97–119, § 203(a)(2), 95 Stat. 1639, 1644 (1981), *codified at* 30 U.S.C. § 922(a)(2); 20 C.F.R. § 725.212(a)(3)(ii). Because Keener

died from a heart attack, Mrs. Keener could not meet the threshold requirement for recovery under the new law.

**2.** EACC cross-appealed the ALJ's award on Keener's claim. The ALJ's award to Keener, which was based upon its finding that Keener was totally disabled, was affirmed by the Board, and the EACC has not appealed the Board's decision to this court.

**3.** We have jurisdiction over this appeal pursuant to 33 U.S.C. § 921(c), which is incorporated by reference in 30 U.S.C. § 932(a).

Respondent EACC challenges our jurisdiction on two grounds. First, EACC argues that the withdrawal of Keener's 1978 application rendered that application a legal nullity, depriving

## II.

Petitioner challenges the decisions and orders of the Benefits Review Board and the ALJ on three grounds. First, she contends that the ALJ's determination, and ultimately the Board's decision, that her husband's withdrawal of his original application for benefits was valid is not supported by substantial record evidence. Second, she argues that the withdrawal of the 1978 application was not in the best interests of her husband, as is required by 20 C.F.R. § 725.306. Finally, she maintains that an alleged misstatement of law by claims examiner Ashley deprived her husband of procedural due process in violation of the Fifth Amendment. We believe that none of these contentions has merit.

### A.

The ALJ concluded that Keener's withdrawal of his 1978 application for benefits was valid based upon Keener's January 22, 1979, certified statement in which he requested withdrawal of his application. In that statement, Keener stated that he did not believe that he was suffering from complicated pneumoconiosis; that he had no intention of ceasing work in the coal mine in the "foreseeable future"; and that he wished to withdraw his application for benefits. J.A. at 8. In addition, he certified that he had been informed that he had three years after a determination of total disability due to pneumoconiosis within which to apply for benefits, and that he understood that a working miner cannot receive benefits unless he suffers from complicated pneumoconiosis. *Id.* The ALJ reasoned from this certified statement that Keener's "decision to withdraw his application was based on the fact that he did not plan to retire within the foreseeable future." *Id.* at 72. He concluded, therefore, that Keener had validly withdrawn his application.

The Benefits Review Board affirmed the ALJ's finding that Keener had validly withdrawn his application on essentially the same grounds relied upon by the ALJ. The Board succinctly stated its reasoning as follows:

> The administrative law judge properly found that the miner wished to withdraw his application at that time since he did not plan to retire within the foreseeable future, and he was aware that he could not receive benefits while he worked in a coal mine unless he had complicated pneumoconiosis, which he did not think he had. Additionally, the miner was aware that he had three years to claim benefits after he was found totally disabled.

*Id.* at 86.

 This court must decide whether the Board correctly determined that the ALJ's factual findings are supported by substantial evidence in the record. *See* 33 U.S.C. § 921(b)(3), *incorporated by* 30 U.S.C. § 932(a); *Zbosnik v. Badger Coal Co.*, 759 F.2d 1187, 1189–90 (4th Cir.1985); *Wilson v. Benefits Review Bd.*, 748 F.2d 198, 200 (4th Cir.1984). "Substantial evidence" is "such evidence as a reasonable mind might accept to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *accord Newport News Shipbuilding & Dry Dock Co. v. Parker*, 935 F.2d 20, 22 (4th Cir.1991).

We believe, as did the Board, that Keener's certified statement, standing alone, constitutes substantial evidence that the withdrawal of Keener's application was valid. That statement, by its terms, shows that Keener wished to continue to work into the "foreseeable future"; that he understood that he could not continue to work and receive benefits because he did not believe that he was suffering from complicated pneumoconiosis; and that he under-

---

both the Benefits Review Board and this court of any basis for jurisdiction. EACC also argues that petitioner lacks standing to petition for review. We are unpersuaded by either argument. This court has jurisdiction because it is reviewing a final order of the Board denying Mrs. Keener's 1987 claim. That claim turns

upon whether Keener's 1978 claim was validly withdrawn, but our jurisdiction is not predicated upon the 1978 claim. Mrs. Keener obviously has the requisite standing because, contrary to EACC's suggestion, we are reviewing the Board's disposition of Mrs. Keener's claim, not her husband's.

stood that he could, within three years of a determination that he had contracted complicated pneumoconiosis, reapply for benefits. J.A. at 8. Keener correctly understood the law on both receipt of benefits while employed, *see* 30 U.S.C. § 923(d); 20 C.F.R. § 725.503A(a)(2), and on the need to apply for benefits within three years of a medical determination of total disability due to pneumoconiosis, *see* 30 U.S.C. § 932(f); 20 C.F.R. § 725.308(a). And there is no suggestion that in fact Keener wished to cease work, and thus that his statement that he intended to continue to work was either unknowing or involuntary.

Petitioner argues that the ALJ misinterpreted Keener's certified statement as it embodied Keener's understanding on the amount of time that he had to claim benefits following a determination that he was totally disabled, and that the ALJ ignored the alleged fact that Keener was misled by Ashley as to the time during which he could continue to work following filing of an application for benefits. She contends that the ALJ's misinterpretation of Keener's statement and his "failure to come to grips" with the alleged misstatement of law deprive the ALJ and Board decisions of the substantial evidence on which they must rest. Petitioner's Br. at 22.

We believe that the ALJ at one point in his opinion may have mischaracterized Keener's January 22, 1979, statement, and we agree with petitioner that the ALJ failed to "come to grips"—at least on the record—with the alleged misstatement of law. We disagree, however, that either the mischaracterization, the apparent oversight, or even the two in combination renders the record evidence recited above insubstantial.

■ As to the asserted misinterpretation of Keener's statement, Keener certified that he was "informed of the requirement of a miner to claim black lung benefits within three (3) years of the date on which the miner is determined to be totally disabled due to pneumoconiosis." J.A. at 8. In his decision and order, the ALJ initially summarized Keener's statement correctly, explaining that "the miner certified that he

had been informed of the requirement of a miner to claim black lung benefits within three years of the date on which the miner is determined to be totally disabled due to pneumoconiosis." *Id.* at 72. Two sentences later, however, the ALJ characterized Keener's statement as "indicat[ing] that he was informed that he had three years from the time that he was found to be totally disabled due to pneumoconiosis in which *to stop work.*" *Id.* (emphasis added). And he repeated the substance of this characterization two sentences later in his finding based upon Keener's statement.

There is little question that the ALJ mischaracterized this portion of Keener's statement. But even if we assume that the ALJ's characterization evidenced a misinterpretation of Keener's statement, as petitioner suggests, rather than an unintended misstatement, our judgment that the ALJ's and Board's conclusion is supported by substantial evidence would not be affected. That judgment is based upon Keener's certified statement, which correctly recites the law, not upon the ALJ's recitation of the contents of that statement.

Petitioner's second contention is that claims examiner Ashley misinformed Keener as to the law relating to employment during the pendency of his claim; that the ALJ failed to address this allegation; and that, given the misinformation, there cannot be substantial evidence in the record to support the ALJ and Board decision. Even assuming that Ashley did misinform Keener on this aspect of the law, which cannot be determined from the record, we believe the decisions below nonetheless should be affirmed.

Under Labor Department regulations, a miner suffering from simple rather than complicated pneumoconiosis must cease coal mine employment within "1 year after a *final determination* of eligibility" in order to receive black lung benefits. 20 C.F.R. § 725.503A(a)(2) (emphasis added). Keener does not refer to this requirement in his certified statement. Both petitioner and her daughter testified that Keener "understood" Ashley's advice to mean that he had to cease work within a year of

applying for benefits.[4] Neither witness, however, testified that Ashley told her that Keener had to cease work within a year of applying for benefits. Nor did either witness testify that *Keener* told her that Ashley had told him he was required to cease work within a year of applying for benefits.

■ The only other evidence bearing on the advice given by Ashley to Keener was Ashley's telephone logs. According to these logs, Ashley told Keener that he "must stop [coal mine employment] within

1 yr of *notice of award* in order to receive benefits." J.A. at 5 (emphasis added).[5]

Neither the ALJ nor the Review Board explicitly addressed petitioner's claim that Ashley misinformed Keener, and the parties disagree over what the evidence proves. We do not believe that it is necessary for this court to resolve the disagreement. The decisions below that withdrawal of the application was valid are still supported by the substantial evidence recited above even if Ashley did misinform Keener as to the law in the respect suggested by petitioner.[6]

---

**4.** Petitioner states in her brief that her husband "was informed by Ms. Ashley ... 'that if he made application for black lung benefits he had to quit work within a year.'" Petitioner's Br. at 5 (quoting J.A. at 52). In fact Mrs. Keener testified only that her husband *understood* that he would have to quit within a year of his application:

A [Ashley] talked to [Keener] and he *understood* that if he made application for Black Lung benefits he had to quit work within a year, and that he could not work and receive Black Lung benefits....

....

Q Was it explained to your husband that 'quit work within a year' means quit work within one year from the final decision on the claim?

A No, he did not *understand* it that way. He *believed* that one year was all you had to work....

....

Q When you talked to [Ashley], did she tell you that a miner could pursue a Black Lung claim while he was working, and if he was awarded benefits while working, he would still be entitled to those benefits as long as he quit within one year of the final decision?

A That wasn't the way I *understood* it. I mean, I *understood* that if you made application for Black Lung, you must quit work within a year.

J.A. at 52–55 (emphasis added). Similarly, the Keeners' daughter testified:

Q Did [your father] tell you what his *understanding* was of the requirements for obtaining Black Lung benefits in terms of while he was working?

A He told me that he had to quit work within a year if he applied for Black Lung. *Id.* at 63 (emphasis added).

**5.** The ALJ never referred to Ashley's telephone logs in his opinion. These logs, however, contrary to petitioner's suggestion, *see* Petitioner's Br. at 21–24, could be read to support a conclusion either that Ashley did or did not misinform Keener. This is especially the case if, as respondent Department of Labor states, these logs are

only "synopses," not transcriptions of the actual conversations. *See* Federal Respondent's Br. at 7 n. 5. The entry could be read as consistent with the law, if one equates "notice of award" with "final determination," which would not be unreasonable. Or, it could be read as a misstatement of law, if one assumes that the term "notice of award" necessarily refers, for example, to the initial determination of eligibility, before any opportunity for review or appeal.

**6.** That this is so confirms, as respondent Department of Labor recognizes *see* Federal Respondent's Br. at 14–21, that petitioner's argument is, in effect, an argument of equitable estoppel against the government, not an argument that the decisions below are not supported by substantial evidence. At the hearing before the ALJ, Mrs. Keener even characterized this argument as "an equitable estopo [sic] kind of argument." J.A. at 44.

Petitioner does not appear to have raised below or otherwise preserved a claim of equitable estoppel, and neither the ALJ nor the Board addressed an equitable estoppel claim as such. The claim, however, would have no merit in this case. The Supreme Court has never sustained an equitable estoppel claim against the government, *see, e.g., Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 2469–71, 110 L.Ed.2d 387 (1990), although it has reserved judgment on whether "affirmative misconduct" could support such a claim. *See Heckler v. Community Health Servs.,* 467 U.S. 51, 60 & n. 12, 104 S.Ct. 2218, 2224 & n. 12, 81 L.Ed.2d 42 (1984); *Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1981) (per curiam); *see also United States v. Asmar,* 827 F.2d 907, 912 (3d Cir.1987) (estoppel against the government available upon proof of "affirmative misconduct"); *New Jersey v. Department of Health & Human Servs.,* 670 F.2d 1284, 1297 (3d Cir.) (same), *cert. denied,* 459 U.S. 824, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982). Even were we to hold that the government may be equitably estopped upon a showing of affirmative misconduct, there is no evidence of such misconduct in this

## B.

Petitioner's second argument is that Keener's withdrawal of his application was not in his "best interests" as, she contends, is required by Department of Labor regulations.

Pursuant to 20 C.F.R. § 725.306, a claimant may withdraw a previously filed claim for benefits provided *inter alia* that "the appropriate adjudication officer approves the request for withdrawal on the grounds that *it is in the best interests of the claimant." Id.* § 725.306(a)(2) (emphasis added).[7] Ashley determined that Keener's request to withdraw his application for benefits was "in [his] best interest," although the precise reasons for her determination are not evident from the record. *See* J.A. at 9 (letter of Jan. 23, 1979, from Ashley to Keener). The requirement of section 725.306(a)(2) that the adjudication officer approve the withdrawal request *on the grounds* that withdrawal is in the best interests of the claimant thus was satisfied. Petitioner's contention is not that this requirement was not fulfilled, but rather that the underlying determination that withdrawal was in Keener's best interest was incorrect.

 The ALJ and the Benefits Review Board effectively affirmed Ashley's determination that withdrawal of the application was in Keener's best interests by upholding the validity of Keener's withdrawal. We must affirm that decision if it is supported by substantial evidence; it is not our task to attempt to determine whether in fact withdrawal of the application was in Keener's best interests. *See Zbosnik,* 759 F.2d at 1189–90; *Wilson,* 748 F.2d at 200.

Neither the Benefits Review Board nor the courts have construed the phrase "in the best interests of the claimant," and in issuing regulations governing the filing, processing, adjudication, and payment of black lung claims, the Labor Department did not discuss the meaning of "best interests." *See* Final Rule, 43 Fed.Reg. 36,772, 36,785 (Aug. 18, 1978). We assume, in the absence of any evidence to the contrary, that the term is to be accorded its ordinary meaning. On this assumption, the same evidence that supports the ALJ and Board decision that the withdrawal was valid—Keener's own certified statement—also supports their decision that Keener's withdrawal of his application was "in his best interests."[8] Keener's statement reflects that he believed that withdrawal of the application was in his best interests because he could continue to work, as he wished to do, but would not jeopardize his right to seek benefits in the future. We believe that the ALJ and the Benefits Review Board could reasonably conclude from the statement, as Ashley apparently did, that Keener's best interests would, in fact,

---

record. At the hearing before the ALJ, Mrs. Keener's counsel conceded, "I don't think [the Labor Department] was lying, I think it was misleading," J.A. at 44, and in her brief in this court she states that Ashley's conduct was not "malicious" and "probably seemed entirely innocent to Ashley," Appellant's Br. at 19.

**7.** 20 C.F.R. § 725.306 provides:

(a) A claimant or an individual authorized to execute a claim on a claimant's behalf or on behalf of claimant's estate under § 725.305, may withdraw a previously filed claim provided that:

(1) He or she files a written request with the appropriate adjudication officer indicating the reasons for seeking withdrawal of the claim;

(2) The appropriate adjudication officer approves the request for withdrawal on the grounds that it is in the best interests of the claimant or his or her estate, and;

(3) Any benefits previously paid with respect to the claim are reimbursed.

(b) When a claim had been withdrawn under paragraph (a) of this section, the claim will be considered not to have been filed.

Neither party disputes that the first and third requirements of this section were satisfied in this case.

**8.** Respondent Department of Labor argues that the purpose of § 725.306(a)(2) is to provide the deputy commissioner the authority he would otherwise lack to "disapprove of a claimant's withdrawal of his claim when such a withdrawal is not in [the claimant's] best interests." Respondent reasons from this premise that petitioner lacks standing to challenge the commissioner's "best interests" determination. Federal Respondent's Br. at 22. We do not read the provision in the way that respondent does. It seems to us that the clear purpose of the provision is to set forth the conditions that must be satisfied before a claimant "may" withdraw his claim, not to empower the deputy commissioner to disapprove a withdrawal request.

be served by allowing him to withdraw his application, continue to work into the foreseeable future, and seek benefits at a later date.

Petitioner herself offers no evidence or explanation in support of her contention that withdrawal was not in her husband's best interest. She merely reasserts in support of this claim that Ashley misinformed Keener as to the law relating to continued employment during the pendency of a benefits application, and alleges that Ashley failed to inform Keener of the impending regulatory change concerning benefits entitlement. *See* Petitioner's Br. at 13–17. Neither allegation, however, even if true, establishes that withdrawal of the application was not in Keener's best interests. Keener's subjective understanding of the law is irrelevant to whether, objectively, it was in his best interests to withdraw the claim. And Keener was not disadvantaged by his lack of awareness of the regulatory change, or even by the change itself; he recovered the same disability benefits under the new regulatory scheme, *see* 20 C.F.R. part 718, that he would have recovered under the predecessor scheme, *see id.* part 727. Mrs. Keener's right to derivative benefits was not affected by the change in regulations either; she lost her claim not because of the change in regulations, but as a consequence of the 1981 amendments to the Black Lung Benefits Act, which altered the eligibility requirements for survivor's benefits. Ashley, of course, could not have foreseen this amendment.

### C.

▪ Petitioner contends, finally, that her husband had a procedural due process right to "full and adequate notice" that "the Department of Labor was going to contact him and suggest that the claim be withdrawn." Petitioner's Br. at 25. She argues that "the misleading nature of the information conveyed" to Keener by Ashley "constituted a notice," and that the notice was inadequate to apprise her hus-

band of the action then being considered by the Department of Labor. There is no evidence in the record that petitioner raised a due process claim before either the ALJ or the Benefits Review Board. In any event, the claim is without merit.

The record is unclear as to whether Ashley initiated contact with Keener, or vice versa, on the specific issue of application withdrawal. *See* Petitioner's Br. at 7–8; Federal Respondent's Br. at 7 n. 6, 20 n. 20; Private Respondent's Br. at 19 n. 12. But even if Ashley first contacted Keener, the purpose of that contact was not to act against a property interest of Keener's, or even to apprise him of an action that the Labor Department intended to take against him or his property; no government action against Keener was ever contemplated. The purpose of the telephone call was merely to discuss with Keener whether he wished to withdraw his application [9]—a decision that rested solely with him—and to inform him of the rules governing his claim and withdrawal. Under these circumstances, the Fifth Amendment is simply not implicated because there is no "deprivation" of a property interest.

### CONCLUSION

For the reasons stated herein, the decision and order of the Benefits Review Board is affirmed.

AFFIRMED.

---

**9.** Ashley's notes do not reflect that she recommended to Keener that he withdraw his applica-

tion. *See* J.A. at 5–7.