RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0198P (6th Cir.)
File Name: 04a0198p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MICHIGAN EXPRESS, INC.;
MAHMOUD ABDALLAH;
NABIL AJAMI,
 *Plaintiffs-Appellants,*

  *v.*

UNITED STATES OF AMERICA,
 *Defendant-Appellee.*

No. 03-1595

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-71772—George E. Woods, District Judge.

Argued: June 10, 2004

Decided and Filed: June 29, 2004

Before: MARTIN and SUTTON, Circuit Judges;
WILLIAMS, Senior District Judge.[*]

---

[*] The Honorable Glen M. Williams, Senior United States District Judge for the Western District of Virginia, sitting by designation.

---

## COUNSEL

**ARGUED:** Lawrence W. Rattner, RATTNER MEDINA PROFESSIONAL CORPORATION, Detroit, Michigan, for Appellants. Peter A. Caplan, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Lawrence W. Rattner, RATTNER MEDINA PROFESSIONAL CORPORATION, Detroit, Michigan, for Appellants. Peter A. Caplan, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Michigan Express Inc., Mahmoud Abdallah, and Nabil Ajami appeal from the district court's grant of summary judgment for the United States. The district court held that the fining of Mr. Abdallah and Mr. Ajami by the Food and Nutrition Services, a division of the Department of Agriculture, was proper. We AFFIRM.

I.

Mr. Abdallah and Mr. Ajami owned shares in Michigan Express, Inc., a retail grocery store located in Detroit, Michigan. The Department of Agriculture authorized Michigan Express to accept food stamps.

Between May 3, 2000, and September 8, 2000, the Department of Agriculture's Food and Nutrition Service conducted an undercover investigation of Michigan Express to ensure it was complying with food-stamp laws and regulations. On four occasions, Michigan Express personnel

accepted food stamps in payment for ineligible, non-food items.  On three occasions, Michigan Express personnel accepted cash in exchange for food stamps.

On November 13, 2000, the Food and Nutrition Service informed Mr. Abdallah that Michigan Express was disqualified from participating in the food-stamp program, the disqualification of the business did not preclude further action being taken by the Department of Agriculture or any other federal agency, and he and Mr. Ajami faced civil penalty if Michigan Express was sold or otherwise transferred.  An Assistant United States Attorney sent Mr. Abdallah and Mr. Ajami a letter, dated April 24, 2001, which, in pertinent part, reads:

> I am writing to inform you that, upon further review and consideration, this office has determined that it will not pursue a False Claims Act action or other federal action against you for alleged food stamp trafficking at Michigan Express, Inc.

On September 7, 2001, Mr. Abdallah and Mr. Ajami, relying on the letter, sold Michigan Express.  After learning of the sale, the Food and Nutrition Service informed Mr. Abdallah and Mr. Ajami that they would be required to pay a $23,918 fine for selling the store after it had been disqualified from the food-stamp program.[1]    Michigan

---

[1] The Food and Nutrition Service imposed the fine pursuant to 7 C.F.R. § 278.6(f)(2), which reads:

> In the event any retail food store or wholesale food concern which has been disqualified is sold or the ownership thereof is otherwise transferred to a purchaser or transferee, the person or other legal entity who sells or otherwise transfers ownership of the retail food store or wholesale food concern shall be subjected to and liable for a civil money penalty in an amount to reflect that portion of the disqualification period that has not expired, to be calculated using the method found at § 278.6(g).  If the retail food store or wholesale food

Express, Mr. Abdallah, and Mr. Ajami requested an administrative review, arguing that the letter from the Assistant United States Attorney estopped the government from pursuing other penalties against them.  The Department of Agriculture's Administrative Review Board sustained the fine.  Michigan Express, Mr. Abdallah and Mr. Ajami then filed suit in the United States District Court for the Eastern District of Michigan seeking an order rescinding the fine.  On cross-summary-judgment motions, the district court affirmed the decision of the Review Board.  This appeal followed.

II.

We review *de novo* a district court's order granting summary judgment, *Markva v. Haveman*, 317 F.3d 547, 552 (6th Cir. 2003), and in our review, we view the evidence in the light most favorable to the non-moving party.  *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).  We will affirm if a party fails to make a showing sufficient to establish the existence of an essential element on which it would bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If a party claims the government is estopped from making an argument, summary judgment is appropriate in favor of the government if there is an insufficient showing for any of the estoppel elements.  *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992).

---

concern has been permanently disqualified, the civil money penalty shall be double the penalty for a ten year disqualification period.  The disqualification shall continue in effect at the disqualified location for the person or other legal entity who transfers ownership of the retail food store or wholesale food concern notwithstanding the imposition of a civil money penalty under this paragraph.

### III.

Although separated into two parts in their brief, Michigan Express, Mr. Abdallah, and Mr. Ajami make one basic argument. They contend that the government, by the language of the Assistant United States Attorney's letter, was estopped from fining or pursuing any punitive action against them in regards to their sale of the business. They do not argue that the fine was illegally imposed; they argue only that the government should have been estopped from pursuing it.

### A.

"Estoppel is an equitable doctrine which a court may invoke to avoid injustice in particular cases." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001). "[T]he traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000). The government, however, "may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 60 (1984). Instead, "[a] party attempting to estop the government bears a very heavy burden" in sustaining its argument. *Fisher*, 249 F.3d at 444. At a minimum, the party must demonstrate some "affirmative misconduct" by the government in addition to the other estoppel elements. *Ibid.*

Our Court has never announced the definition of "affirmative misconduct." Although we have cases applying the rule, *see, e.g., In re Gardner*, 360 F.3d 551, 559 (6th Cir. 2004), we have not set the bounds of the concept. A review of our sister circuits, however, reflects a general consensus on the definition.

The Ninth Circuit defines "affirmative misconduct" as a deliberate lie or a pattern of false promises. *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir. 2001) (en banc). In an earlier case it gave a more developed definition, explaining that "[n]either the failure to inform an individual of his or her legal rights nor the negligent provision of misinformation constitute affirmative misconduct." *Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir. 2000). The Seventh Circuit defines "affirmative misconduct" as "more than mere negligence . . . . It requires an affirmative act to misrepresent or mislead." *LaBonte*, 233 F.3d at 1053. The Fifth Circuit, in almost identical language, defines "affirmative misconduct" as "something more than merely negligent conduct." *United States v. Marine Shale Processors*, 81 F.3d 1329, 1350 n. 12 (5th Cir. 1996). Instead, "the [government] official must intentionally or recklessly mislead the estoppel claimant." *Id.* at 1350. Lastly, the Fourth Circuit defines "affirmative misconduct" as lying rather than misleading and as malicious, not negligent, conduct. *Keener v. E. Associated Coal Corp.*, 954 F.2d 209, 214 n.6 (4th Cir. 1992).

Finding the common approach of sister circuits prudential, we hold that "affirmative misconduct" is more than mere negligence. It is an act by the government that either intentionally or recklessly misleads the claimant. The party asserting estoppel against the government bears the burden of proving an intentional act by an agent of the government and the agent's requisite intent.

### B.

The government's conduct in this case does not rise to the requisite level of malfeasance to qualify as "affirmative misconduct." It is true that the government could have worded the letter better, explaining in clearer terms that its waiver of claims was limited to punishing past conduct and expressly retaining the right to pursue punishment if

Michigan Express were sold.  But, the failure to explain is at best a negligent error, not a reckless one.

The government was not attempting to trick Mr. Abdallah or Mr. Ajami.  Instead, the government was attempting, in good-faith, to advise Mr. Abdallah and Mr. Ajami as to its intended course of action based on the facts that it knew. Mr. Abdallah or Mr. Ajami seem to admit as much in describing the Assistant United States Attorney as "culpably negligent." They admit that they do not believe that the attorney's loose language was deceptively drafted with malicious intent, and that admission defeats their argument.

As the Supreme Court has pointed out, punishing the good-faith and conscientious efforts of the government by an easy rule of estoppel "might create not more reliable advice, but less advice. . .." *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 433 (1990).  We wish to avoid that consequence.

We AFFIRM the judgment of the district court.