# United States Tax Court

T.C. Memo. 2025-76

ESTATE OF BILLY S. ROWLAND, DECEASED,
JAMES A. PARK, EXECUTOR,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 12736-22.                                Filed July 15, 2025.

————

*Mark S. Feuer*, for petitioner.

*David L. Wisdom*, *Gary R. Shuler*, and *Lindsey L. Cacciatore*, for respondent.


MEMORANDUM OPINION

URDA, *Chief Judge*:  Billy Rowland, a successful businessman from Lorain, Ohio, passed away in late January 2018, two years after his wife, Fay.  The value of the Estate of Fay Rowland (Fay's Estate) was under the floor for estate tax liability, which is known as the basic exclusion amount.  As permitted by section 2010(c)(2)(B),[1] the Estate of Billy S. Rowland (Billy's Estate) later sought to use (or "port" in estate tax parlance) the difference between the basic exclusion amount and the value of Fay's Estate, i.e., the deceased spousal unused exclusion (DSUE), to reduce Billy's Estate.

———

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary values to the nearest dollar.

**[\*2]**    To do so the estate tax return for Fay's Estate had to be timely filed. The Commissioner moves for partial summary judgment, asserting that Fay's Estate neither timely filed its return nor qualified for the safe harbor embodied in Rev. Proc. 2017-34, 2017-26 I.R.B. 1282.[2] Billy's Estate responds that multiple disputed facts preclude summary judgment on this issue and that any errors should be excused on the grounds of regulatory murkiness, substantial compliance, or equitable estoppel. We will grant partial summary judgment to the Commissioner.

## *Background*

The following facts are based on the parties' pleadings, motion papers, and supporting exhibits. *See* Rule 121(c). Mr. and Mrs. Rowland both lived in Ohio when they died, as did the executor of their respective estates, James A. Park, when the petition was filed.

I.    *Fay's Estate*

    A.    *Trust Agreement*

In 1990 Mrs. Rowland executed a trust agreement, which she amended in 2002 and again in 2010 (Trust Agreement). As matters stood after the last round of changes, the Trust Agreement established specific bequests totaling $950,000 to certain individuals including Mrs. Rowland's daughter, son, friends, and grandchildren and to a collegiate foundation and a trust for a great grandchild. It further provided for a distribution of 20% of the trust estate to a charitable family foundation and "such amount . . . as when added to property to [Mr. Rowland] under my Last Will and Testament . . . will be equal to one-fourth of my gross estate," defined to mean "all property included in my gross estate for federal estate tax purposes." The Trust Agreement stated that the residue of the trust would be dedicated to fund trusts for various grandchildren.

    B.    *Estate Tax Return*

Mrs. Rowland died on April 8, 2016. The executor of Fay's Estate applied for and received an automatic extension to file her estate tax return, which moved the due date from January 9 to July 8, 2017.

---

[2] The Commissioner also sought partial summary judgment as to the tax treatment of certain gifts, an issue that Billy's Estate has since conceded.

**[*3]** The executor did not file the return for Fay's Estate by the extended deadline. He ultimately mailed the Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return (Fay's Return), on December 29, 2017, which the Internal Revenue Service (IRS) received on January 2, 2018.

The header of the first page of Fay's Return displayed the phrase "FILED PURSUANT TO REV PROC 2017-34 TO ELECT PORT SEC 2010(c)(5)(A)." Fay's Return reflected a gross estate of $3 million and payments to 13 named beneficiaries, totaling $1,401,000. It calculated a DSUE amount of $3,712,562, derived from the following inputs:

| Item | Amount |
|---|---|
| Basic Exclusion Amount[3] | $5,450,000 |
| Estimated Gross Estate | (3,000,000) |
| Estimated Total Allowable Deductions | 1,500,000 |
| Adjusted Taxable Gifts | (237,438) |
| Total DSUE | 3,712,562 |

After the DSUE calculation, Fay's Estate completed the Form 706 schedules by listing various assets in which Mrs. Rowland held an interest at the time of her death. Each of the provided schedules featured the same stock text:

> **Note.** If the value of the gross estate, together with the amount of adjusted taxable gifts, is less than the basic exclusion amount and the Form 706 is being filed solely to elect portability of the DSUE amount, consideration should be given as to whether you are required to report the value of assets eligible for the marital or charitable deduction on this schedule. See the instructions and Reg. section 20.2010-2T(a)(7)(ii) for more information. If you are not required to report the value of an asset, identify the property but make no entries in the last three columns.

Fay's Return listed assets including real property, shares of Rowland Motors, Inc., shares of Rowland Marietta, Inc., a note receivable of Rowland Enterprises, and various bank accounts. The return did not

---

[3] For 2016, the year of Mrs. Rowland's death, the basic exclusion amount equaled $5,450,000. *See* Rev. Proc. 2015-53, § 3.33, 2015-44 I.R.B. 615, 623.

[*4] include any information as to the fair market value of those assets but instead estimated the gross value of the estate.

II.    *Billy Rowland's Estate Tax Return and Notice of Deficiency*

Mr. Rowland died on January 24, 2018.  On April 22, 2019, Billy's Estate timely filed Form 706 (Billy's Return) reporting adjusted taxable DSUE of $3,712,562.  Billy's Return added this amount to the 2018 basic exclusion amount, $11,180,000,[4] resulting in an applicable exclusion of $14,892,562.  Billy's Return reported a net estate tax of $4,477,555 and claimed a refund of $22,445 based on a previous payment of $4,500,000.

The IRS selected Billy's Return for an examination which culminated in the issuance of a notice of deficiency that determined, inter alia, that Billy's Estate was ineligible to claim the DSUE amount.  The notice stated that "upon review of [Fay's Return], a proper, complete, and effective portability election was not made to port such predeceased spouse's unused applicable exclusion amount to her surviving spouse . . . and, accordingly, no DSUE amount was available for [Billy's Estate]."

The notice first observed that Fay's Return had not been filed within the time to elect portability under the applicable regulations.  It accordingly explained that Fay's Return had to satisfy the requirements of the safe harbor set forth in Rev. Proc. 2017-34 to be deemed timely.  The notice concluded that Fay's Return was not a "complete and properly prepared estate tax return" as required by Rev. Proc. 2017-34 because (1) it did not provide complete descriptions or valuation information for the property making up Fay's Estate and (2) it was ineligible to estimate the value of the property under Treasury Regulation § 20.2010-2(a)(7)(ii).

Specifically, the notice stated that Mrs. Rowland's will provided for certain nonmarital bequests of property to various individuals, which "should have been itemized and valued on [Fay's Return] in order to be in compliance with Treas. Reg. [§] 20.2010-2(a)(7)(ii)."[5]  After noting that Mrs. Rowland's residuary property would pass to her trust under her will, the notice also explained that the structure of the Trust Agreement

---

[4] For 2018, the year of Mr. Rowland's death, the basic exclusion amount was $11,180,000.  *See* Rev. Proc. 2018-18, § 3.35, 2018-10 I.R.B. 392, 397.

[5] Neither party introduced Mrs. Rowland's will in support of their position on summary judgment.  Neither contested the general description of the will in the notice, and we accordingly will rely on that description to the extent necessary.

**[\*5]** (i.e., percentages to Mr. Rowland and the family charity and the remainder to residuary trusts) precluded the estimated reporting approach employed on Fay's Return and required the itemization and valuation of all property. Because Fay's Return merely estimated the gross value of Fay's Estate, it did not comply with Treasury Regulation § 20.2010-2(a)(7) and could not take advantage of the safe harbor.

*Discussion*

## I.   *Summary Judgment*

We may grant partial summary judgment if there is no genuine dispute of material fact regarding an issue and a decision may be rendered as a matter of law. *See* Rule 121(a); *see also Elec. Arts, Inc. v. Commissioner*, 118 T.C. 226, 238 (2002). The moving party bears the burden of proving that there is no genuine issue of material fact, and we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). When a motion for summary judgment is made and properly supported, the adverse party may not rest upon mere allegations or denials of the pleadings but must set forth specific facts showing that there is a genuine issue for trial. Rule 121(d).

## II.   *Statutory Framework*

### A.   *Estate Tax Principles*

Section 2001(a) imposes a tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." This tax is based on the sum of the taxable value of the estate and the amount of taxable gifts made by the decedent after 1976. *See Estate of Sower v. Commissioner*, 149 T.C. 279, 284 (2017); *see also* I.R.C. § 2001(b)(1).

A decedent's taxable estate is determined by reducing the value of the gross estate by the values of permissible deductions. I.R.C. § 2051. The gross estate sweeps up the value of any property in which a decedent had an interest at the time of his death. I.R.C. § 2033. Allowable deductions include (1) the amounts of any bequests, legacies, devises, or transfers for certain recognized charitable purposes, I.R.C. § 2055, and (2) the value of property passing from a decedent to her surviving spouse, I.R.C. § 2056; *see also Estate of Anenberg v. Commissioner,* 162 T.C. 199, 206 (2024) ("The marital deduction does

**[\*6]** not eliminate or reduce the tax on the transfer of marital assets out of the marital unit, but instead permits deferral until the death of or gift by the surviving spouse.").

B.    *Unified Credit*

1.    *General Structure*

Section 2010 provides a "unified credit against estate tax," which effectively reduces the value of the gross estate for the purpose of calculating the tax.  *See Estate of Sower*, 149 T.C. at 284.  This credit is equal to the sum of the basic exclusion amount (i.e., $11,180,000 for 2018) and, in the case of a surviving spouse, the DSUE amount.  I.R.C. § 2010(c)(2).  The DSUE amount is the lesser of the basic exclusion amount or "the excess of—(i) the applicable exclusion amount of the last such deceased spouse of such surviving spouse, over (ii) the amount with respect to which the tentative tax is determined under section 2001(b)(1) on the estate of such deceased spouse."  I.R.C. § 2010(c)(4).

The unified credit thus is constructed so that a marital unit can benefit from each spouse's basic exclusion amount to the fullest extent possible.  The later deceased spouse's estate can reduce its taxable estate both by the basic exclusion amount applicable to that estate and by any amount left over from the application of the basic exclusion amount to the estate of the predeceased spouse.  I.R.C. §§ 2010(c)(5)(A), 2001(b).

2.    *DSUE Election*

Section 2010(c)(5)(A) provides that a DSUE amount may not be claimed by a surviving spouse unless (1) "the executor of the estate of the deceased spouse files an estate tax return on which such amount is computed," (2) that executor makes an election on the deceased spouse's estate tax return, and (3) such return is timely filed.  The parties do not dispute the first two requirements, leaving open only the timeliness of Fay's Return.

Generally, "the due date of an estate tax return required to elect portability is nine months after the decedent's date of death or the last day of the period covered by an extension (if an extension of time for filing has been obtained)."  Treas. Reg. § 20.2010-2(a)(1).  As relevant here, the IRS offered an additional safe harbor, providing that "a complete and properly prepared" estate tax return would be considered timely if filed "on or before the later of January 2, 2018, or the second

**[\*7]** annual anniversary of the decedent's date of death." Rev. Proc. 2017-34, § 4.01(1), 4.02, 2017-26 I.R.B. at 1284.

A return is considered "complete and properly prepared if it is prepared in accordance with [Treasury Regulation] § 20.2010-2(a)(7)." *Id.* § 4.01(1). For its part, Treasury Regulation § 20.2010-2(a)(7)(i) pins the meaning of "complete and properly prepared" to (1) compliance with "the instructions issued for the estate tax return (Instructions for Form 706)" and (2) satisfaction of "the requirements of [Treasury Regulation] §§ 20.6018-2, 20.6018-3, and 20.6018-4." Both parties focus on the former requirement.

Form 706 includes various schedules related to different types of property: real estate (Schedule A); stock and bonds (Schedule B); mortgages, notes, and cash (Schedule C); insurance on the decedent's life (Schedule D); jointly owned property (Schedule E); and other miscellaneous property (Schedule F). Each schedule requires a listing of properties that fit within the subject matter of the schedule, as well as, inter alia, its value at the date of the decedent's death. The instructions to the respective schedules direct an executor to complete the schedule, offering concrete directions how to do so. The Schedule B instructions explain how to value an interest in a closely held corporation, while the Schedule E instructions explain how to value jointly owned properties in various circumstances.

Treasury Regulation § 20.2010-2(a)(7)(ii) establishes a "special rule" for marital or charitable deduction property where the estate is not required to file a return under section 6018(a). In such a case, the executor is not required to report the value of such property but "only the description, ownership, and/or beneficiary of such property, along with all other information necessary to establish the right of the estate to the deduction." *Id.* In essence, Treasury Regulation § 20.2010-2(a)(7)(ii) relaxes the reporting requirements governing valuation of property that will ultimately be deducted from the value of the gross estate by means of sections 2055 and 2056 in the case of a return being filed solely to elect portability.

What the Treasury Regulations give, however, they take away in four specified circumstances. As relevant here, relaxed reporting does not apply to marital or charitable deduction property if "[t]he value of such property relates to, affects, or is needed to determine, the value passing from the decedent to a recipient other than the recipient of the

**[*8]** marital or charitable deduction property." Treas. Reg. § 20.2010-2(a)(7)(ii)(A)(*1*).

Treasury Regulation § 20.2010-2(a)(7)(ii)(C), example 3, shows the mechanics. This example posits a hypothetical will "provid[ing] that 50 percent of the property passing under the terms of H's will is to be paid to a marital trust for W and 50 percent is to be paid to a trust for W and their descendants." *Id.* The example concludes that the general return requirements apply because the "amount passing to the non-marital trust cannot be verified without knowledge of the full value of the property passing under the will." *Id.* "Therefore, the value of the property of the marital trust relates to or affects the value passing to the trust for W and the descendants of H and W." *Id.*

III.    *Analysis*

   A.    *Improper Election*

      1.    *Section 2010(c)(5)(A)*

Fay's Return failed to make a proper portability election under section 2010(c)(5)(A). According to that provision, "[n]o election may be made . . . if [the relevant] return is filed after the time prescribed by law (including extensions) for filing such return." *See also* Treas. Reg. § 20.2010-2(a)(1) ("[T]he due date of an estate tax return required to elect portability is nine months after the decedent's date of death or the last day of the period covered by an extension (if an extension of time for filing has been obtained)."). In this case, Mrs. Rowland died on April 8, 2016, and it is undisputed that her executor did not file Fay's Return by the extended deadline of July 8, 2017. Thus, Fay's Return was ineligible for the election under section 2010(c)(5)(A).

      2.    *Rev. Proc. 2017-34*

Fay's Return likewise does not qualify for the safe harbor embodied in Rev. Proc. 2017-34. As an initial matter, the filing of Fay's Return on January 2, 2018, complies with the requirement that the return be filed "on or before the later of January 2, 2018, or the second annual anniversary of the decedent's date of death." *See* Rev. Proc. 2017-34, § 4.01(1).

Although Fay's Return clears the first hurdle for relief, it crashes into the next, i.e., a "complete and properly prepared" return prepared in accordance with Treasury Regulation § 20.2010-2(a)(7). *See* Rev.

**[\*9]** Proc. 2017-34, § 4.01(1). Fay's Return did not provide valuation information regarding each of the interests in property reported on the various schedules. These omissions contravene the Form 706 instructions, which Treasury Regulation § 20.2010-2(a)(7)(i) treats as necessary for a complete and properly prepared return.

Nor can Fay's Return shelter under the special rule set forth in Treasury Regulation § 20.2010-2(a)(7)(ii). This rule relaxes valuation reporting requirements, but with respect to only marital and charitable deduction property. *Id.* At best, it would allow Fay's Estate to estimate the value of only certain assets and does not obviate the need to comply with the detailed reporting requirements for assets that did not pass to either Mr. Rowland or charity.

Fay's Return makes no attempt to identify and distinguish marital and charitable deduction property and instead incorrectly applies the relaxed treatment across the board. Specifically, it reports (on Part 5 — Recapitulation) a value of "$0" for each category of property listed on the various schedules and a total value of $3 million on the entry for "Estimated value of assets subject to the special rule of Reg. section 20.20210-2T(a)(7)(ii)." The relevant instruction confirms that such treatment is reserved only for "the estimated value of the *assets subject to the special rule*," i.e., marital and charitable deduction property. (Emphasis added.) As Fay's Estate plainly contains property that did not pass to Mr. Rowland or charity, Fay's Return failed to satisfy the applicable regulation (and instructions) as to the nonmarital and charitable deduction property. It thus was not complete and properly prepared.

Fay's Return also erred in applying the relaxed reporting requirements to the marital and charitable deduction property of Fay's Estate. The loosened reporting standard "does not apply" where the "value of such property relates to, affects, or is needed to determine, the value passing from the decedent to a recipient other than the recipient of the marital or charitable deduction property." Treas. Reg. § 20.2010-2(a)(7)(ii)(A)(*1*). The Trust Agreement provides for a distribution of 20% of the trust estate to a charitable family foundation and "such amount . . . as when added to property to [Mr. Rowland] under my Last Will and Testament . . . will be equal to one-fourth of my gross estate," defined to mean "all property included in my gross estate for federal estate tax purposes." The Trust Agreement further states that the residue of the trust would be distributed to trusts for various grandchildren. Plainly, the value of the property passing to the family charitable foundation and

**[\*10]** Mr. Rowland "relates to, affects, or is needed to determine" the value passing to the trusts for Mrs. Rowland's grandchildren. Relaxed reporting does not apply.

In summary, Fay's Return was not entitled to estimate the gross value of Fay's Estate but instead was required to provide specific valuation information for each property interest listed in the schedules. Fay's Return thus did not constitute a complete and properly prepared return eligible for the Rev. Proc. 2017-34 safe harbor.

B.     *Arguments of Billy's Estate*

Billy's Estate searches for a way around the result compelled by Rev. Proc. 2017-34 and Treasury Regulation § 20.2010-2(a)(7), but to no avail.

1.     *Substantial Compliance*

Billy's Estate argues that Fay's Return substantially complied with the requirements to make a valid DSUE election by filing an estate tax return that "report[ed] the information necessary to determine that no estate tax is due and estate tax exemption remains available." According to Billy's Estate, the Treasury Regulations and the Form 706 instructions were unclear at best and that any errors on Fay's Return do not defeat the validity of the return or the DSUE election. Billy's Estate concludes that the IRS suffered no harm because Fay's Return reported the DSUE amount, component gross estate, amount distributed to each beneficiary, and total deductions, which "should have been sufficient for [the IRS] to verify the DSUE amount."

"The Commissioner may insist that taxpayers strictly comply with regulatory requirements, but in certain circumstances we have held that regulatory requirements can be satisfied by substantial compliance." *Schlapfer v. Commissioner*, T.C. Memo. 2023-65, at \*14 (citing *Am. Air Filter Co. v. Commissioner*, 81 T.C. 709, 719 (1983)). We previously have applied the doctrine of substantial compliance to regulations and other IRS guidance, including revenue procedures. *Dengin v. Commissioner*, T.C. Memo. 2023-31, at \*15; *see also, e.g., Coca-Cola Co. & Subs. v. Commissioner*, 155 T.C. 145, 287 (2020). We have cautioned, however, that "the substantial compliance doctrine should not be liberally applied." *Alli v. Commissioner*, T.C. Memo. 2014-15, at \*54.

**[\*11]** Before beginning our analysis, we note that the substantial compliance regime does not neatly map onto the safe harbor provision here. Rev. Proc. 2017-34 does not set forth requirements for the DSUE election required by section 2010(c)(5)(A). It instead represents an act of administrative discretion that deems timely those filed estate tax returns that would otherwise be unable to make the DSUE election without the grant of a discretionary extension under Treasury Regulation § 301.9100-3. *See* Rev. Proc. 2017-34, § 2.02, 2017-26 I.R.B. at 1282; *cf. Vennes v. Commissioner*, T.C. Memo. 2021-93, at \*44–45; *Giambrone v. Commissioner*, T.C. Memo. 2020-145, at \*11 (describing another safe harbor as "an exercise of administrative discretion on the part of the IRS, offering beneficial treatment for categories of theft losses meeting certain well-defined conditions"). Although the revenue procedure pins its relief to the "complete and properly prepared" return requirements of Treasury Regulation § 20.2010-2(a)(7), *see* Rev. Proc. 2017-34, §4.01, compliance with the regulatory requirements in this context unlocks discretionary administrative relief. We are hard-pressed to say that Fay's Estate can "gain the benefit of [the safe harbor] without adhering to the conditions the IRS imposed." *See Giambrone*, T.C. Memo. 2020-145, at \*11; *Hawse v. Commissioner*, T.C. Memo. 2015-99, at \*23 ("[P]resuming [the Commissioner's] consent when a taxpayer's request varies from [the] terms [of the applicable revenue procedure] would be antithetical to the concept of discretion . . . .").

We need not resolve here, however, whether the doctrine of substantial compliance is ever available for making a valid DSUE election.[6] Even assuming arguendo that the doctrine of substantial

---

[6] To be clear, the applicability of the doctrine of substantial compliance generally would require us to determine that the reporting requirements enshrined in Treasury Regulation § 20.2010-2(a)(7) did not relate to the substance or essence of the statute. *See Bond v. Commissioner*, 100 T.C. 32, 41 (1993); *see also Estate of Chamberlain v. Commissioner*, T.C. Memo. 1999-181, 1999 WL 349350, at \*12 ("[T]here is no defense of substantial compliance for failure to comply with the essential requirements of the governing statute [or] . . . if to [apply substantial compliance] would defeat the policies of the underlying statutory provisions."), *aff'd*, 9 F. App'x 713 (9th Cir. 2001). Given our conclusion that Fay's Return did not substantially comply with the governing requirements, we need not (and accordingly will not) resolve this issue. *See, e.g.*, *Stromme v. Commissioner*, 138 T.C. 213, 218 n.8 (2012) ("For now, the better course is 'to observe the wise limitations on our function and to confine ourselves to deciding only what is necessary to the disposition of the immediate case.'" (quoting *Whitehouse v. Ill. Cent. R.R. Co.*, 349 U.S. 366, 372–73 (1955))); *see also, e.g.*, *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) (explaining that where "a sufficient ground [exists] for deciding [a] case, . . . the cardinal principle of judicial restraint—if it is not

**[\*12]** compliance is available, Fay's Return did not measure up under that doctrine. Generally, the doctrine of substantial compliance is designed to avoid hardship in cases where a taxpayer does all that is reasonably possible, but nonetheless fails to comply with the specific requirements of a provision. *See, e.g.*, *Samueli v. Commissioner*, 132 T.C. 336, 345 (2009).

We are unconvinced that Fay's Return can be seen as doing all that was reasonably possible to comply with Treasury Regulation § 20.2010-2(a)(7). This regulation requires a return making a DSUE election to satisfy the requirements of the Form 706 instructions. Treas. Reg. § 20.2010-2(a)(7)(i). These instructions, in turn, direct an estate to list items of property by schedule and provide a fair market value of each item of property according to methodology provided in the instructions. The rigors of this reporting regime are only relaxed for marital and charitable deduction property (which would not be part of the taxable estate) and only where such property would not "relate[] to, affect[], or [be] needed to determine, the value" of nonmarital or charitable deduction property. Treas. Reg. § 20.2010-2(a)(7)(ii)(A)(*1*).

These reporting requirements came in direct response to Congress's command that the IRS "shall prescribe such regulations as may be necessary or appropriate to carry out" the various aspects of the unified credit regime, including the DSUE. I.R.C. § 2010(c)(6). Specific to the DSUE context, Congress authorizes the IRS to "examine a return of the deceased spouse to make determinations with respect to such amount for purposes of carrying out this subsection," notwithstanding any normal limitation periods. I.R.C. § 2010(c)(5)(B). And Congress expressly forbids the claiming of the DSUE amount outside of an election on a timely filed return. I.R.C. § 2010(c)(5)(A). In short, Congress set up a regime to allow the IRS to obtain information on the required return to evaluate the DSUE amount claimed and identify problematic elections.

Fay's Return falls well short of providing the requisite information. Although Fay's Return lists various items of property by schedule, it does not include the fair market value at the date of death of any such item. In computing the DSUE amount, Fay's Return instead estimates the gross value of Fay's Estate as $3 million and includes the amounts of specific bequests to various individuals. Fay's Return thus

---

necessary to decide more, it is necessary not to decide more—counsels us to go no further").

[*13] provides a fraction of the detailed item-by-item value reporting required to support the claimed gross estate and DSUE amount.

Nor do we view the errors and omissions on Fay's Return as a mere foot-fault. Fay's Return does not allow the IRS to do the work entrusted to it by a Congress that expected the IRS to police DSUE elections. As implemented in the instructions, Treasury Regulation § 20.2010-2(a)(7) requires the provision of specific valuation information so that the IRS can verify the DSUE amount or examine further. Fay's Return obscures, rather than illumines, the property-specific information needed to verify the DSUE amount and thus frustrates the IRS's efficient identification of questionable DSUE elections. And the fact that the IRS might be able to use the specific bequests on Fay's Return together with the Trust Agreement to somehow reverse engineer the DSUE amount does not stand in for the required information missing from the face of the return. We accordingly conclude that the failure to report the requisite property value information on Fay's Return cannot be excused on substantial compliance grounds.[7]

## 2.   *Equitable Estoppel*

Billy's Estate next urges us to apply the doctrine of equitable estoppel to prohibit the IRS from disallowing the DSUE claim, asserting that the IRS's failure to alert Billy's Estate to problems with Fay's Return constitutes a misleading silence. It argues that the IRS's silence on this point deprived Fay's Estate of the opportunity to correct any errors under Treasury Regulation § 301.9100-3. Finally, Billy's Estate argues that, at the very least, the silence requires discovery that precludes partial summary judgment.

"This Court and others have held that the doctrine of equitable estoppel can be asserted against the Commissioner but that it 'should be applied against him with utmost caution and restraint.'" *Estate of Sower*, 149 T.C. at 287 (quoting *Estate of Emerson v. Commissioner*, 67

---

[7] Billy's Estate argues that information provided during the examination demonstrates that the gross estate amount on Fay's Return was approximately correct. Regardless of whether that information filled in the missing information, provision at the examination stage would not change this Court's analysis, which necessarily focuses on Fay's Return. *See Oakhill Woods, LLC v. Commissioner*, T.C. Memo. 2020-24, at *15 ("The regulation creates a prophylactic rule designed to provide the IRS with information to help it decide whether to commence an examination. This requirement would be meaningless if a taxpayer could cure noncompliance ex post facto, after learning that an examination had begun and was headed toward an adverse outcome.").

**[\*14]** T.C. 612, 617 (1977)).  Four essential elements must be shown to prevail on a claim of equitable estoppel against the Commissioner:

> (1) There must be a false representation or wrongful misleading silence; (2) the error must be in a statement of fact and not in an opinion or a statement of law; (3) the person claiming the benefits of estoppel must be ignorant of the true facts; and (4) he must be adversely affected by the acts or statements of the person against whom an estoppel is claimed.

*Id.* (quoting *Estate of Emerson*, 67 T.C. at 617–18); *see also Veeraswamy v. Commissioner*, T.C. Memo. 2024-83, at \*11 (adding a fifth element, i.e., the taxpayer reasonably relied on a false or misleading statement by the IRS).

The U.S. Court of Appeals for the Sixth Circuit, the court to which an appeal would ordinarily lie per section 7482(b)(1), further requires the party seeking equitable estoppel to show "affirmative misconduct" by the government.  *Premo v. United States*, 599 F.3d 540, 547 (6th Cir. 2010); *see also Veeraswamy*, T.C. Memo. 2024-83, at \*11–13.  Affirmative misconduct "is more than mere negligence.  It is an act by the government that either intentionally or recklessly misleads the claimant." *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004).

Billy's Estate fails to establish the necessary prerequisites for estoppel.  The record, which includes the IRS examining officer's activity notes and affidavits from the representatives of Billy's Estate, contains no hint of affirmative misconduct by the IRS examining officer.  The record shows that the assigned examining officer identified the potential DSUE issue on June 30, 2021.  Both the notes and the affidavits tell the same story: The examining officer requested limited information from the representatives of the Billy's Estate while analyzing various aspects of the issue over the next few months.  On November 15, 2021, the examining officer informed the representatives that he had concluded that Fay's Return had made an improper DSUE election.  We cannot conclude that the examining officer committed affirmative misconduct by not giving the representatives updates and opportunities to respond in medias res.

The lack of affirmative misconduct is not the only missing element of the estoppel claim.  The examining officer's purported

**[\*15]** wrongful misleading silence does not relate to a statement of fact, but the IRS's legal position that Fay's Return did not comply with Treasury Regulation § 20.2010-2(a)(7) and thus did not qualify for the safe harbor.

We also struggle to see any detriment from the examining officer's silence under the view articulated by Billy's Estate. Specifically, Billy's Estate argues that the examining officer had concluded that the DSUE election was not allowable on June 30, 2021. According to Billy's Estate, Fay's Estate could have filed for an extension under Treasury Regulation § 301.9100-3 if it had been informed of the problem in June. But nothing in Treasury Regulation § 301.9100-3 suggests that an extension request filed in June, after the IRS had purportedly discovered the improper election, would receive different treatment from one filed in November.

On the undisputed record, Billy's Estate does not qualify for equitable estoppel.[8]

IV.  *Conclusion*

As a matter of law, Fay's Return failed to make a timely DSUE election under Rev. Proc. 2017-34, and Billy's Estate therefore cannot port the DSUE amount to reduce its taxable estate. We will grant the Commissioner's motion for partial summary judgment in full.

To reflect the foregoing,

*An appropriate order will be issued.*

---

[8] Billy's Estate argues that partial summary judgment should be deferred or denied to allow for further discovery to develop these points. We are mindful that summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (noting that the nonmoving party must have had "a full opportunity to conduct discovery"). Of course, discovery must be relevant to "the subject matter involved in the pending case." Rule 70(b)(1); *accord Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947); *see also Caney v. Commissioner*, T.C. Memo. 2010-90, 2010 WL 1687679, at \*2. Further discovery into the IRS's delays and silence (all of which are undisputed) is irrelevant to our disposition of the pending motion for partial summary judgment. *See, e.g.*, Rule 121(e); *Caney v. Commissioner*, 2010 WL 1687679, at \*2 (considering whether "further discovery would likely yield any fact essential to [the nonmoving party's] opposition to the motion" where it contended that discovery was necessary to evaluate summary judgment motion).